**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 7/5/96**

**TENTH CIRCUIT**

---

GARY CHAVEZ,

       Plaintiff-Appellee,

v.

CITY OF ARVADA, a municipal
corporation,

       Defendant-Appellant.

No. 95-1042

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 90-N-99)**

---

Robert M. Liechty (Theodore S. Halaby with him on the brief) of Halaby Cross Liechty
Schluter & Buck, Denver, Colorado, for Defendant-Appellant.

Eva Camacho Woodard, Lakewood, Colorado, for Plaintiff-Appellee.

---

Before **ANDERSON**, Circuit Judge, **McWILLIAMS,** Senior Circuit Judge, and
**HOLMES**, District Judge.[*]

---

**McWILLIAMS, Senior Circuit Judge.**

---

     [*] Honorable Sven Erik Holmes, District Judge for the Northern District of
Oklahoma, sitting by designation.

Gary Chavez, a long-time employee of the City of Arvada ("City") brought an employment discrimination action (failure to promote) under 42 U.S.C. § 2000e, *et seq.*, against the City in the United States District Court for the District of Colorado. In a trial to the court, the district court found that the City had failed to promote Chavez in retaliation for his filing a complaint against the City with the Equal Employment Opportunity Commission ("EEOC") some ten years prior thereto. The district court then entered judgment in favor of Chavez and against the City in the sum of $23,065, said sum representing back pay and interest thereon. The district court also entered an additional judgment in favor of Chavez and against the City for attorney's fees and costs in the amount of $25,262, making the total amount of the judgment $48,327. The City appeals.

At the conclusion of the presentation of evidence, and after oral argument of counsel, the district court on December 12, 1991, made its findings of facts and conclusions of law from the bench. Such findings and conclusions were in considerable detail and cover some 46 typewritten pages, double-spaced, in the City's appendix.[1] The trial transcript is not a part of the record before us, and counsel for both sides in their respective briefs rely on the district court's findings for their Statement of Facts. Such being the case, we must necessarily also rely on the findings of the district court in

_____

[1] The City filed a notice of appeal from the judgment entered on or about December 12, 1991. That appeal, No. 94-1520, was later dismissed because of a jurisdictional defect. An amended judgment was entered by the district court on December 22, 1994, and an amended notice of appeal was filed on January 23, 1995.

detailing the sequence of events giving rise to the present controversy.

Relying then on the district court's recital of the background facts, it appears that the City has a Public Works Department and that one Ron Culbertson at all pertinent times was the Director of the department. Within the Public Works Department, there are several subdivisions, one of which is the Street and Drainage Maintenance Division. One Kelly Schulz headed this division from 1971 until January 16, 1988. There are three crews within the Street and Drainage Maintenance Division, namely: (1) the sweeping and mowing crew; (2) the asphalt crew; and (3) the drainage and concrete crew. Each of these crews has a "crew supervisor." The position which Chavez sought, but did not get, was the position of crew supervisor for the drainage and concrete crew. The position became vacant when the incumbent retired. At the time of the vacancy in the position of crew supervisor for the drainage and concrete crew, Chavez, who had previously been on that particular crew, was a member of the sweeping and mowing crew which was then headed by a Mr. Hammons.

The vacancy in the position of crew supervisor for the drainage and concrete crew occurred in the Fall of 1987, and the City proceeded to fill the vacancy. Notice was posted and ten persons applied for the vacancy in question. After a testing process, all ten were certified as possessing the required minimum qualifications to the selecting authority, Culbertson.

The testing process was rather elaborate and consisted, *inter alia*, of both a written

and oral examination, with the oral examination constituting 75% of the final test score, and the written examination constituting 25% of the final score. The district court concluded that the written test had been "fairly and correctly administered, graded and scored." More will be said later about the oral examination. A Mr. Bowman, who ultimately was made crew supervisor for the drainage and concrete crew, scored slightly higher than Chavez in the oral examination, whereas Chavez scored slightly higher than Bowman on the written examination. Combining both examinations, Bowman and Chavez had identical scores of 47.15 on the combined oral and written examinations. Bowman was apparently listed first on the eligibility list since he scored higher than Chavez on the more heavily weighted portion of the test, namely, the oral examination.

Although Culbertson was technically permitted to choose any of the ten persons on the eligibility list, he quickly narrowed the list to Chavez and Bowman. As a part of the selection process, Culbertson sought the recommendation of Schulz, who would be the direct supervisor of the successful candidate, as well as the recommendation of the then current direct supervisor of both Chavez and Bowman. As indicated, Chavez was then serving as senior equipment operator on the sweeping and mowing crew, which was headed by Hammons, and Bowman was a senior equipment operator on the asphalt crew, which was then headed by Dick Beasley. Hammons recommended Chavez. Beasley recommended Bowman. Schulz recommended Bowman.

In addition to considering the recommendations of Hammons, Beasley and Schulz, and the test scores, Culbertson developed five questions to be put to the two candidates in his oral interview with each. After interviewing both Bowman and Chavez, and considering, *inter alia*, their answers to his five questions, to which Bowman scored higher than Chavez, Culbertson selected Bowman to be the crew supervisor for the drainage and concrete crew. The district court in its findings stated that Culbertson in selecting Bowman over Chavez "relied upon his own judgment as to who provided better answers to his questions."

The district court also found that in 1977 Chavez filed a claim of discrimination with the EEOC claiming that the City failed to train him for a position of senior equipment operator. The court further noted that the claim had been settled and that Chavez "dropped the matter without proceeding further." Continuing, the district court found, however, that there was no persuasive evidence that Culbertson knew of Chavez' prior claim when he made the decision to promote Bowman over Chavez in 1987. The district court also noted, parenthetically, that in 1990, about two years after Chavez did not get the promotion to crew supervisor of the drainage and concrete crew, Chavez had been promoted to crew supervisor of the sweeping and mowing crew when Hammons retired. The district court observed that in getting that promotion the "testing process" was similar to the testing process used two years earlier when Chavez did not get the

promotion. At that time, Chavez obtained the highest score on both the written and oral examinations and it was Culbertson who appointed him.

As indicated, Culbertson, being the Director of Public Works Division, was the sole appointing authority for the position of crew supervisor for the drainage and concrete crew. Culbertson testified at trial. The district court summarized Culbertson's testimony concerning his personal decision to select Bowman, not Chavez, for the position in question as follows:

> He testified that he relied upon his own judgment as to who provided better answers to his questions. He relied upon the test results as to which the candidates were scored but--the candidates were tied, but Mr. Bowman had an edge because of his higher score on the oral test. Mr. Culbertson also relied upon the supervisors' recommendations. He clearly stated that he examined all the information as a whole and that it was all considered equally--and that he considered it equally important to him in making his decision.

The district court also found that there was a "hostile work environment" within the Street and Drainage Maintenance Division based on "sex and national origin." However, the district court rejected Chavez' suggestion that the hostile work environment was "strong evidence" of discrimination when he was passed over for promotion to the position of crew supervisor for the drainage and concrete crew. In this regard, the district court concluded that *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs cases where "a plaintiff attempts to prove a case of discrimination by circumstantial evidence" and does not apply "very readily when you've got direct evidence of

-6-

discrimination." Having thus concluded, the district court expressed the view that the present case is a "mixed motive" case, and, as such, governed by *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). According to the district court, the "burden of proof under *Price Waterhouse* shifts to the defendant to demonstrate by a preponderance of the evidence that the same employment decision would have been made even if the improper or illegal factors had not been considered."

As concerns Schulz, who was head of the Street and Drainage Maintenance Division, the district court indicated that although Schulz in recommending Bowman to Culbertson "may not have been motivated by racial animus . . . [he] was motivated by a retaliatory animus, in that he was retaliating against Mr. Chavez for the filing of the previous EEOC complaint." In support thereof the district court noted that when Chavez "approached him [Schulz] after the [written] test, Mr. Schulz told him, 'Oh, no, you're not going to pull that one on me again.'" The district court stated that although Schulz denied making any such statement, it believed Chavez on this particular matter. In this same connection, the district court went on to state that this statement attributed to Schulz by Chavez "was referring to the fact that he was the supervisor in 1977 in the department when Mr. Chavez filed his previous complaint."[2] The district court then held that this was not a "circumstantial evidence" case because there was direct evidence of retaliatory

---

[2] The district court in its findings did recognize the possibility of a personality conflict between Chavez and Schulz, observing that Chavez was aggressive and that Schulz was older and "set in his ways."

animus on the part of Schulz, based on the "Oh, no . . ." statement, and that Schulz'

participation in the grading of the oral examination, as well as his recommendation of

Bowman over Chavez, was taken into consideration by Culbertson in making his decision

to promote Bowman. Specifically, the district court found that "Mr. Schulz' animus,

retaliatory in nature, infected not only his recommendation to Mr. Culbertson, but

infected the very test which supposedly provided objectivity to this process." In this

particular connection, the district court concluded as follows:

> What we end up with then, or what I end up
> confronting is this situation. Mr. Culbertson himself may not
> have intended to discriminate, may not have been motivated
> by a retaliatory animus, but he considered several factors,
> some of which were discriminatory and improper, others of
> which were perfectly proper. I, frankly, find nothing
> improper about his own scoring of his own oral test. He made
> a case that I find is persuasive that Mr. Bowman scored better
> on that test, and I'm not going to interfere with his judgment
> as to that test alone. But he also gave some weight and some
> unspecified weight to these other improper factors.

Such being the case, the district court opined that under *Price Waterhouse, supra*,

the City had the burden of showing that the decision by Culbertson to promote Bowman

over Chavez "would have been the same had you thrown out the recommendation of Mr.

Schulz, had you thrown out the results of the oral test, and had you thrown out the

recommendation of Mr. Beasley," and stated, "I do not believe that that burden has been

discharged." So much for the district court's findings of fact.

-8-

As his first claim for relief, Chavez alleged in his complaint that the City decided not to promote him to crew supervisor--and instead promoted Mr. Bowman, a white male--because of the fact that he (Chavez) was a Hispanic. As we read the district court's findings, the district court did not so find. The district court did find, *inter alia,* that there was a hostile work environment in the Street and Drainage Maintenance Division based on gender and national origin, but concluded, as we understand it, that such was not the cause of the City's decision to promote Bowman over Chavez.

Chavez also alleged in his complaint that the City's decision to promote Bowman, and not Chavez, to crew supervisor was in retaliation for his filing an EEOC complaint against the City in 1977. Culbertson was originally a defendant in this proceeding. Pursuant to a stipulated motion of the parties, Culbertson was dismissed with prejudice from the case. And in its findings, the district court found that Culbertson, in promoting Bowman instead of Chavez, was not acting in retaliation for Chavez filing a complaint against the City with the EEOC in 1977.

The court's basis, then, for holding the City liable to Chavez, as we understand it, was that Schulz, the head of the Street and Maintenance Division, in evaluating Chavez' answers to the questions posed in the oral examination test, and in his ensuing recommendation of Bowman over Chavez to Culbertson, was acting in retaliation for Chavez filing a complaint against the City with the EEOC some ten years earlier. In this general regard we note that Chavez in his complaint had alleged as follows:

On or about 11/19/89, the Defendant Appointing Authority Culbertson selected the white male, Mr. Bowman, for the Crew Supervisor position, and as part of his decision, relied heavily upon the advice of Plaintiff's supervisor who stated that he recommended against Plaintiff receiving the promotion directly because the Plaintiff had previously prevailed in a discrimination complaint he had filed against Defendant City of Arvada and which was resolved in 1977 (emphasis in original).

Significantly, the district court did not find that Schulz recommended to Culbertson that Chavez not be appointed supervisor for the drainage and concrete crew because Chavez filed a discrimination complaint against the City in 1977. And, importantly, there was no evidence which would support Chavez's allegations in his complaint.

The district court did find that in 1977 Schulz was the supervisor of a crew in which Chavez was a member and that Culbertson was then the Director of the Public Works Division. And it was an admitted fact that Chavez in 1977 had filed a complaint against the City with the EEOC, complaining that he had not been afforded training that conceivably could have lead to a promotion. We do not know much more about the details of the complaint, although the complaint was settled without recourse to litigation. What part, if any, Schulz, or Culbertson for that matter, played in the 1977 incident is not in the record before us.

The oral test would appear to be at the core of the present controversy, and perhaps a bit more should be said about it. Schulz, with the assistance of a Mr. Polk, who was in

charge of the oral and written examinations, drew up the questions for both examinations. The written examination was held on November 9, 1987, and was graded immediately thereafter by Schulz. As indicated, Chavez outscored Bowman on the written examination, 10.5 to 9. Notwithstanding, before the oral examination was even held, Chavez complained to Schulz about his grading of the written examination. To which, according to Chavez--but denied by Schulz--Schulz said: "Oh, no, you're not going to pull that one again on me." Since Schulz denied making the one sentence attributed to him by Chavez, he of course would not have to explain the statement. As far as we can tell, Chavez did not opine as to his understanding of the statement. However, the district court held that this one sentence uttered by Schulz showed retaliatory animus for Chavez filing a complaint with the EEOC in 1977. And the district court held that this retaliatory animus caused Schulz, who was but one of five evaluators of the oral examination, to give Chavez low marks on the oral examination and to recommend Bowman over Chavez to Culbertson.

We review the district court's factual findings under the clearly erroneous standard. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). *See also Candelaria v. EG & G Energy Measurements, Inc.,* 33 F.3d

-11-

1259, 1261 (10th Cir. 1994) and *Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).

In *Burrus v. United Telephone Co. of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir. 1982), *cert. denied*, 459 U.S. 1071 (1982), we stated that a plaintiff in a retaliation case must first establish, *prima facie*, the following: (1) he engaged or participated in a prior protected Title VII proceeding; (2) he was later disadvantaged by action of his employer subsequent to or contemporaneously with such participation; and (3) there is a causal connection between the protected activity and the adverse employment action. In *Burrus* we went on to say that "[t]he causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action" (emphasis added). *Id.*

Here any adverse action certainly did not "closely follow" Chavez' protected activity. It occurred some ten years after the protected activity. There is nothing in the record before us to indicate that there was any continuing friction, let alone retaliatory animus, between the City and Chavez during that ten-year period. And in any event, the district court held that this was not a "circumstantial evidence case," and that retaliatory animus had been proven by direct evidence.

Back to *Burrus*, we agree that the first and third prongs of the test for adverse employer action based on retaliation were met, i.e. Chavez did engage in protected

activity in 1977, and in 1987 he suffered adverse employer action when he was not promoted to crew supervisor for the drainage and concrete crew. The issue to be resolved is whether there was a "causal connection" between Chavez' protected activity in 1977 and the City's failure to promote Chavez in 1987. We hold that the evidence is insufficient to support the district court's finding of "causal connection."

To us, it is significant that the adverse action was separated from the protected activity by some ten years. As stated above, there is nothing in the record before us to indicate that there was continuing friction between the City and Chavez from 1977, the year of the protected activity, and 1987, the year of the adverse employment action. In *Burrus,* the employee had been terminated over three years after her initial charge of gender retaliation. In that case, we upheld the district court's determination that the employer's termination was "justifiable," since male and female employees were all being terminated because there was "duplicating work done elsewhere." In so holding, we said, "[g]iven the length of time [three years] between the filing of [the initial] charges and the termination, we agree with the trial court that Burrus [the employee] failed to establish a *prima facie* case of retaliation based on her termination." *Id. Candelaria* involved an employee who brought suit alleging that her employer had breached a conciliation agreement which she and her employer had entered into concerning a prior discrimination complaint wherein the employer agreed, *inter alia*, that "there shall be no discrimination or retaliation of any kind against [Candelaria] for raising this complaint." *Candelaria*, 33

F.3d at 1260. In reversing the district court's holding that the employer had acted in retaliation for the employee's earlier complaint, we said that a retaliatory inference could not be drawn where the adverse action was more than three years from the period of protected activity, citing *Burrus,* 683 F.2d at 1262, for the proposition that "no inference of retaliatory motive [is] permitted where employee's charges were not 'closely followed by adverse action'; showing of termination 'almost three years after' employee filed charges did not establish *prima facie* case of retaliation."

So, under the so-called three year rule of *Burrus* and *Candelaria,* the ten-year lapse between Chavez' protected activity in 1977 and the adverse employment action in 1987 would not permit an inference of retaliation. However, it is agreed that a prior complaint, no matter how distant in the past, could be the basis for retaliation IF there were evidence tying the adverse employer action to the past protected activity.

Which brings us to the "Oh, no . . ." statement attributed by Chavez to Schulz, but denied by the latter. As indicated, we must accept the district court's finding that Schulz did in fact make the remark. Is such a sufficient reed upon which to hang a judgment for nearly $50,000? We think not.

The statement itself is in our view equivocal; whether it refers to the 1977 episode or something occurring in the intervening ten years is pure guesswork. But for that one bit of evidence, the City, under the described circumstances, would have to prevail. And that short utterance attributed to Schulz by Chavez is not enough to change the result. We

-14-

are convinced that a mistake was made. *United States Gypsum Co., supra.* In sum, the evidence in our view is insufficient to support the district court's finding that the City did not promote Chavez in 1987 because he filed a complaint with the EEOC in 1977.

Judgment reversed and cause remanded with direction that the district court enter judgment in favor of the City.