Joyce L. Dosier WRIGHT, Plaintiff,

v.

WYANDOTTE COUNTY SHERIFF'S
DEPARTMENT, Defendant.

Civil Action No. 96–2205–GTV.

United States District Court,
D. Kansas.

April 22, 1997.

Andrew C. Marquardt, The Marquardt Law Firm, P.A., Lenexa, for Plaintiff.

Carl A. Gallagher, McAnany, Van Cleave & Phillips, Kansas City, F. Charles Dunlay, IV, Office of the County Counselor, Kansas City, for Defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

Plaintiff brings this action asserting claims of sex discrimination, race discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and a claim of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The case comes before the court on defendant's motion for summary judgment (Doc. 18). For the reasons set forth below, the motion is granted.

### I. Factual Background [1]

The following facts are either uncontroverted or are based on evidence viewed in the most favorable light to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff Joyce L. Dosier Wright is a fifty-one year old black female. She commenced employment as a deputy sheriff with defendant Wyandotte County Sheriff's Department in February 1990. During her tenure with defendant, plaintiff claims that she was the victim of discrimination based on the following specific incidents:

Sergeant Charles Brooks once disciplined plaintiff for having juice at her work station, but did not sanction other employees who also had beverages at their work stations.

Another sheriff's deputy posted a sign in the medium security pod, where plaintiff was on duty, that read, "Wright is wrong."

At various times, Sergeant Adam Wilson did not answer questions that plaintiff posed to him.

At various times, Sergeant Brooks made disparaging remarks regarding interracial marriages.

Sergeant James Hiles generally spoke to plaintiff with a different tone of voice than he did with all other employees, regardless of race or gender. On one occasion, Sergeant Hiles chased plaintiff down the hall and threatened her. Plaintiff does not recall what Hiles said or any of the circumstances surrounding the incident.

In 1993, Hiles ordered plaintiff to remove her earrings but did not require the same of other employees. After witnessing the earring incident, Captain Dewey Bond stated to plaintiff, "It's a hell of a thing when they start dropping that paper on you." Captain Bond had made a similar comment two years earlier.

In 1993, Captain Bond disciplined plaintiff for not keeping her work station clean even though such maintenance was allegedly the responsibility of other employees. Plaintiff has no knowledge whether any other officers were disciplined over this incident.

On April 21, 1993, Sergeant Milton counseled plaintiff for using the override button to the entrance of a jail pod but did not counsel Deputy John Norris, who had activated the override button in the past.

On July 9, 1993, one of plaintiff's supervisors required her to work overtime and allowed a younger employee to go home.

Defendant disputes many of plaintiff's contentions and further points out that plaintiff's conduct was the subject of numerous disciplinary reports. Those reports encompassed the following incidents:

On October 21, 1990, plaintiff failed to remain in a hospital room with a prisoner at the Kansas University Medical Center. Even after her supervisor, Sergeant Hiles, admonished her to stay with the prisoner at all times, plaintiff left the room on several

---

1. Plaintiff does not dispute any of defendant's uncontroverted facts, but does include in her response twenty-six additional facts. Plaintiff, however, does not attach a copy of her deposition, upon which she relies exclusively in support her factual allegations. Although some of the deposition selections can be referenced by looking to the portions that defendant includes in its motion and reply, many cannot. Pursuant to D. Kan. R. 56.1, the court will not consider any factual contentions not supported with an evidentiary foundation.

additional occasions. Plaintiff received forty disciplinary points for desertion of post and a five-day unpaid suspension for insubordination.

On January 23, 1991, plaintiff disciplined an inmate without the approval of a sergeant, as required by jail policy. No sanctions were imposed against plaintiff.

On January 30, 1991, plaintiff left her post and locked herself out of the B Tower.

On October 13, 1991, plaintiff unholstered her weapon and pointed at a fellow deputy sheriff, "possibly in horse play." As a result of this incident defendant issued plaintiff a letter of discipline for handling her duty weapon in an unsafe manner. Defendant also ordered plaintiff to undergo a Minnesota Multiphasic Personality Inventory (MMPI) at Action Investigations. An MMPI is essentially a psychological evaluation.

On November 13, 1991, plaintiff failed to report to Action Investigations to take her MMPI as ordered. Defendant issued plaintiff a letter of discipline and informed her that she would be suspended without pay until she submitted to the testing.

On July 1, 1992, plaintiff refused to remain on duty as ordered to cover a personnel shortage on a subsequent shift. Defendant issued plaintiff a letter of discipline for insubordination.

On July 5, 1992, plaintiff, in violation of jail policy, authorized an inmate to get on an elevator and deliver iced tea to her duty station. When informed that such behavior contravened departmental rules, plaintiff replied, "I don't compare myself to other officers."

On December 23, 1992, plaintiff received a performance evaluation indicating that she needed development in nearly every area of her job skills.

On February 12, 1993, defendant issued plaintiff a counseling form for failing to keep her jail pod properly maintained. Plaintiff filed a response in which she suggested that her failure to clean the pod was attributable in part to a lack of cleaning supplies. She also maintained that the cleanliness of the pod was the responsibility of the officers who ordinarily oversaw the pod.

On April 7, 1993, plaintiff failed to give her supervisor proper notice that she would be late for work. Defendant assessed plaintiff twenty disciplinary points.

On April 21, 1993, in violation of jail policy, plaintiff neglected to maintain a current assignment sheet of inmates in her area. Plaintiff also provided an inaccurate inmate head count to the succeeding shift. As a sanction, defendant suspended plaintiff for three days without pay.

Plaintiff responded to the suspension by contending that her problems resulted from the duty corporal's refusal to send a rover to relieve her. Defendant conducted an investigation and determined that plaintiff had been provided prompt relief upon request. On appeal, the department's undersheriff affirmed the suspension order.

Also on April 21, 1993, defendant issued plaintiff a counseling form for using the override to the entrance of H Pod, in violation of jail policy. Use of the override causes possible escape concerns.

On June 10, 1993, defendant issued plaintiff a counseling form for failing to account properly for razors that she had issued to inmates. Although plaintiff conceded that she had dispensed the razors, she alleged that it was another deputy's duty to retrieve and inventory the razors.

On July 7, 1993, defendant issued plaintiff a counseling form for failing to provide proper notice that she would be late for her shift.

On July 9, 1993, plaintiff refused an order to remain on duty because of a shortage of personnel. As a result of this refusal, plaintiff's supervisor placed a disciplinary report in plaintiff's permanent file.

On July 10, 1993, plaintiff failed to provide proper notice that she would be late for duty. Defendant assessed plaintiff twenty disciplinary points and placed a letter of discipline in her file.

On July 29, 1993, plaintiff failed to follow the jail's inmate meal policy by refusing to give an inmate his required meal. Plaintiff also violated policy by ordering the inmate to

his cell after he became frustrated over the incident. Defendant assessed plaintiff thirty disciplinary points and placed a letter of discipline in her file.

On August 11, 1993, plaintiff made "trusty assignments" to inmates (i.e. entrusted inmates with special responsibilities) in violation of jail policy. Plaintiff's supervisor recommended that, based on plaintiff's cumulative violations, she be terminated.

On August 25, 1993, defendant discharged plaintiff on the grounds that her failure to follow directives caused continual disruption to the organization. On November 10, 1993, defendant's grievance board upheld plaintiff's termination.

On April 12, 1994, plaintiff filed an EEOC complaint alleging race discrimination, age discrimination, and retaliation. The complaint specified that the alleged discrimination began on June 17, 1993. Plaintiff did not contend at the time, nor does she argue now, that any of the alleged discriminatory acts were continuing in nature. The EEOC subsequently issued plaintiff a right-to-sue letter on January 30, 1996. This lawsuit followed.

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91

L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## III. Discussion

Plaintiff asserts claims of sex discrimination, race discrimination, and retaliation pursuant to Title VII and age discrimination pursuant to the ADEA. The court will evaluate separately each claim. Before doing so, however, the court must address two procedural matters.

### A. Proper Defendant

Plaintiff filed this action against the Wyandotte County Sheriff's Department. The sheriff's department is merely an agency of the county, *Farris v. Board of County Comm'rs,* 924 F.Supp. 1041, 1045 (D.Kan.1996)(citing *Owens v. Rush,* 636 F.2d 283, 286 (10th Cir.1980)), and is not itself capable of being sued. Subordinate governmental agencies do not have the capacity to sue or be sued in the absence of a specific statute. *Mason v. Twenty–Sixth Judicial Dist.,* 670 F.Supp. 1528, 1535 (D.Kan.1987); *Hopkins v. State,* 237 Kan. 601, 702 P.2d 311, 317 (1985); *Withers v. Root,* 146 Kan. 822, 73 P.2d 1113, 1115–16 (1937). Plaintiff should have brought this lawsuit against the Board of County Commissioners of Wyandotte County. *See* K.S.A. § 19–105.

Plaintiff contends that the Wyandotte County commissioners have notice of the case inasmuch as defendant is represented by an attorney from the county counselor's office. Plaintiff suggests that the notice cures any pleading deficiencies. The Kansas Supreme Court has rejected that argument.

There are some statements in the brief of plaintiff to the effect that the county attorney was in the action from the beginning. The record discloses only that he repre-

sented the [defendant]. The record in no-wise discloses he represented the board of county commissioners or that any motion or pleading was ever filed in its behalf by anyone.

*Withers,* 73 P.2d at 1116.

■ Under certain circumstances, the court would grant plaintiff leave to amend her complaint and name the proper party as defendant. In the case at bar, however, amendment would be futile because plaintiff's substantive allegations fail to support either a discrimination or retaliation claim. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (futility of amendment is adequate justification for refusing to grant leave to amend).

### B. Evidentiary Support

■ In support of its summary judgment motion, defendant has submitted numerous documents from plaintiff's personnel file. Plaintiff insists that these materials are inappropriate for such a motion because Fed. R.Civ.P. 56 only authorizes the inclusion of sworn affidavits and certified papers. Plaintiff's argument is without merit. "[T]he particular forms of evidence mentioned in [Rule 56] are not the exclusive means of presenting evidence on a [summary judgment] motion. The court may consider any material that would admissible or usable at trial.... Rule 56(e) is an enlarging provision as to what may considered, not a restriction." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2721 (1983); *accord Duffee v. Murray Ohio Mfg. Co.,* 160 F.R.D. 602, 604 (D.Kan.1995).

The documents from plaintiff's personnel file are admissible business records pursuant to Fed.R.Evid. 803(6). Indeed, defendant attaches an affidavit from the sheriff's department records custodian indicating that the materials satisfy all elements of Rule 803(6). The court, therefore, will not exclude these records in analyzing defendant's motion.

### C. Sex discrimination

■ Plaintiff filed a sex discrimination charge with the EEOC on November 15, 1991. The EEOC determined that no violation had been established and issued a right-to-sue letter on March 26, 1992. Plaintiff took no further action with respect to the sex discrimination allegations until she commenced her lawsuit in April 1996. Defendant argues that this claim must be dismissed as untimely. The court agrees. To maintain an action under Title VII, a plaintiff must file suit within ninety days after receiving the EEOC's right to sue letter. 42 U.S.C. § 2000e–5(f)(1). Failure to adhere to this time limitation bars the claim. *Simons v. Southwest Petro–Chem, Inc.,* 28 F.3d 1029, 1030–31 (10th Cir.1994).

■ The ninety-day time limitation is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Biester v. Midwest Health Servs., Inc.,* 77 F.3d 1264, 1267 (10th Cir.1996) (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982)). Plaintiff, however, alleges no facts indicating why she failed to file a timely complaint. She does not contend that defendant lulled her into inaction or prevented her from asserting her rights. *See Richardson v. Frank,* 975 F.2d 1433, 1435–36 (10th Cir.1991)(describing situations in which equitable tolling is appropriate); *Martinez v. Orr,* 738 F.2d 1107, 1110 (10th Cir.1984) (same). In sum, plaintiff advances no explanation justifying an equitable tolling of the limitation period. Accordingly, summary judgment is granted to defendant on plaintiff's sex discrimination claim.

### D. Race Discrimination

■ Title VII prohibits an employer from discharging or otherwise discriminating against an employee in the "terms, conditions, or privileges of employment" because of that employee's race. 42 U.S.C. § 2000e–2(b). To prevail on her race discrimination claim, plaintiff must establish that defendant had a discriminatory motive or intent. *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1236 (10th Cir.1991). Plaintiff need not prove that defendant's employment actions were motivated solely by race, but she must show that her race was "the factor that made a difference." *Elmore v. Capstan, Inc.,* 58

F.3d 525, 530 (10th Cir.1995). In other words, plaintiff must establish that "she was treated in a manner which 'but for race would have been different.'" *Clark v. Atchison, Topeka & Santa Fe Ry. Co.,* 731 F.2d 698, 702 (10th Cir.1984) (citing *City of Los Angeles Dep't of Water & Power v. Manhart,* 435 U.S. 702, 711, 98 S.Ct. 1370, 1377, 55 L.Ed.2d 657 (1978)).

██ Plaintiff offers no direct evidence that defendant discriminated against her on the basis of race, but relies instead on circumstantial evidence to prove defendant's discriminatory intent. To insure an efficient presentation of circumstantial evidence, the Tenth Circuit has adopted the burden shifting scheme originally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under the *McDonnell Douglas* framework, plaintiff first must establish a *prima facie* case of discrimination. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decisions. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). Assuming defendant meets that burden, all presumptions of discrimination drop from the case. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The burden then shifts back to plaintiff to prove by a preponderance of the evidence that defendant's proffered reasons for the challenged actions are merely a pretext for discrimination. *Randle,* 69 F.3d at 451.

To establish a *prima facie* case of race discrimination, plaintiff must show that: (1) she is a member of a racial minority; (2) her job performance was satisfactory; (3) she was adversely affected by defendant's employment decisions; and (4) similarly situated non-minority employees were treated differently. *See Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1417 (10th Cir. 1993); *McAlester v. United Air Lines, Inc.,* 851 F.2d 1249, 1260 (10th Cir.1988).

Only the second and fourth elements of the *prima facie* case are in dispute. With respect to prong two, defendant claims that plaintiff was unqualified for the deputy sheriff position and never performed the job in a satisfactory manner. The Tenth Circuit, however, has held that an employer's proffered reason for taking an adverse action is not to be considered in assessing the sufficiency of plaintiff's *prima facie* case. *MacDonald v. Eastern Wyo. Mental Health Ctr.,* 941 F.2d 1115, 1119–20 (10th Cir.1991). To the contrary,

> a plaintiff may make out a *prima facie* case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was fired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she held her position for a significant period of time.

*MacDonald,* 941 F.2d at 1121. Plaintiff satisfied this element of her *prima facie* case by her own deposition testimony as well as by the fact that she possessed the same qualifications at the time of her discharge in August 1993 as she did when defendant hired her in February 1990.

██ Defendant further charges that plaintiff cannot demonstrate the fourth prong of her *prima facie* case because she has advanced no evidence indicating that she was treated less favorably than her non-minority counterparts. The court agrees. Plaintiff claims that she was the victim of racially disparate treatment based on the specific incidents discussed in Part I. None of those incidents, however, demonstrate that defendant subjected plaintiff to racial discrimination. First, plaintiff gives no indication that the individuals allegedly accorded differential treatment were non-minorities. Title VII does not require employers to treat all employees equally; it merely prohibits employers from meting out unequal treatment based on race. *EEOC v. Flasher Co.,* 986 F.2d 1312, 1319 (10th Cir.1992); *Clark,* 731 F.2d at 702. Second, other than her own subjective feelings, plaintiff offers no evidence suggesting that defendant's actions were grounded in racial bias. An employee's mere conjecture that her employer engaged in race discrimination does not warrant the denial of an otherwise properly supported summary judgment motion. *See Branson v. Price Riv-*

er Coal Co., 853 F.2d 768, 772 (10th Cir. 1988).

In addition to the specific incidents discussed in Part I, plaintiff also asserts a series of general allegations that are either entirely conclusory in nature or have no evidentiary foundation whatsoever. Such statements are insufficient to defeat a motion for summary judgment. *Martin*, 3 F.3d at 1418; *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 800 (10th Cir. 1993). In sum, plaintiff's vague, non-time-specific and conclusory allegations do not satisfy her burden of establishing a *prima facie* case.[2]

Even if plaintiff could state a *prima facie* case, she advances no competent evidence suggesting that defendant's explanations for its employment decisions were a pretext for discrimination. The disciplinary measures taken against plaintiff, ultimately culminating in her discharge, are supported amply with legitimate and nondiscriminatory rationale. *See* Part I, *supra*. To show pretext, plaintiff must demonstrate "either that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir.1994) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).

Plaintiff's only "proof" of pretext rests in a remark by Captain Bond that, "It's a hell of thing when they start dropping that paper on you." Plaintiff contends this statement shows that defendant deliberately initiated a paper trail to justify plaintiff's termination. This single comment does not establish pretext. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994) ("[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in ter-

mination decisions"). Moreover, even if defendant did initiate a "paper trail," plaintiff offers no evidence that the sanctions imposed on her were unwarranted. Defendant's decision to protect itself in the face of potential litigation by documenting plaintiff's transgressions is not, without more, unlawful discrimination. The court finds that no genuine issues of material fact exist on plaintiff's race discrimination claim. Accordingly, summary judgment is granted to defendant on that claim.

### E.  Retaliation

In her final claim, plaintiff alleges that defendant retaliated against her for filing an EEOC claim in November 1991. To establish a *prima facie* case of retaliation under Title VII, plaintiff must show that: (1) she engaged in protected opposition to discrimination; (2) she suffered adverse action from her employer; and (3) there was a causal connection between her protected activity and her employer's adverse action. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993).

Although conceding that plaintiff has established the first two elements, defendant insists that plaintiff is unable to show a "causal connection" between the filing of her November 1991 EEOC claim and her August 1993 discharge. The causal connection requirement of plaintiff's *prima facie* case "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Chavez v. City of Arvada*, 88 F.3d 861, 866 (10th Cir.1996) (citing *Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir.1982), *cert. denied*, —— U.S ——, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997)). "[T]he phrase 'closely followed' must not be read too restrictively where the pattern of retaliatory conduct begins soon after the filing of the [EEOC complaint] and only culminates later in actual

---

**2.** Plaintiff's complaint, filed *pro se* and not amended by her court-appointed attorney, could be construed broadly to assert a racial harassment claim in addition to general race discrimination. Plaintiff, however, fails to state a *Prima facie* case of racial harassment. The Tenth Circuit has held that more than a few isolated

incidents of racial enmity are necessary to prevail on such a claim. *See Bolden v. PRC, Inc.*, 43 F.3d 545, 550 (10th Cir.1994). "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Id.* (citations omitted). Plaintiff falls far short of making such a showing.

discharge." *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 329 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996). Although defendant had sanctioned plaintiff on numerous occasions prior to her filing sex discrimination charges in November 1991, defendant disciplined her at least thirteen additional times after she filed the charges. Granting plaintiff the benefit of every reasonable inference, the court finds that she has stated a *prima facie* case of retaliation.

■ Plaintiff has failed, however, to raise an inference of pretext. As the court noted in its discussion of plaintiff's race discrimination claim, plaintiff produces no competent evidence calling into question the validity of the sanctions imposed upon her. Her alternative explanations for defendant's employment decisions are predicated on pure speculation. Mere disagreement with an employer's adverse employment actions is not sufficient to establish pretext. The court, finding no genuine issues of material fact, grants summary judgment to defendant on plaintiff's retaliation claim.

*F. Age Discrimination*

■ In support of her age discrimination claim, plaintiff relies exclusively on one incident occurring July 9, 1993. Plaintiff contends that defendant assigned her overtime that evening while allowing a younger deputy to go home "because it was assumed the older officers would stay and work." (Pl.'s Resp. at 8).

■ The ADEA provides, in relevant part, that it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment" on the basis of that individual's age. 29 U.S.C. § 623(a)(1). To prevail on an ADEA claim, a plaintiff must demonstrate that age was "a determining factor" in the employer's challenged decisions. *Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 557 (10th Cir.1996). The plaintiff "need not prove that age was the sole reason for the employer's acts, but must show age 'made the difference' in the employer's deci-

sions." *EEOC v. Sperry Corp.,* 852 F.2d 503, 507 (10th Cir.1988).

Plaintiff's claim has no merit. Defendant made its overtime assignments on a rotating basis pursuant to a collective bargaining agreement. All employees, regardless of age, were included in the rotation. Moreover, plaintiff provides no evidence that defendant failed to follow the normal rotation in requiring her to work overtime on the evening in question. Accordingly, summary judgment is granted on plaintiff's age discrimination claim.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 18) is granted.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**

Dated at Kansas City, Kansas, this day of April, 1997.