M. Damaris **RAWLINS–ROA,** Plaintiff,

v.

**UNITED WAY OF WYANDOTTE COUNTY, INC.,** Defendant.

**Civil Action No. 96–2486–KHV.**

United States District Court, D. Kansas.

Aug. 4, 1997.

---

Albert F. Kuhl, Lenexa, KS, for Plaintiff.

Carl A. Gallagher, Deryl W. Wynn, Joseph F. Reardon, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for Defendant.

VRATIL, District Judge.

### MEMORANDUM AND ORDER

Plaintiff, M. Damaris Rawlins–Roa, initiated this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended, and 42 U.S.C. § 1981, claiming that her former employer, United Way of Wyandotte County, Inc., discriminated against her on the basis of race and national origin. Plaintiff is a black female, born in the Dominican Republic.

This matter comes before the Court on *Defendant's Motion For Summary Judgment* (Doc. # 28) filed May 14, 1997. Defendant claims that plaintiff cannot establish a prima facie case of race or national origin discrimination and also claims that it had legitimate non-discriminatory reasons for terminating plaintiff's employment. In addition, defendant asserts that 42 U.S.C. § 1981 does not provide relief for national origin discrimination, and that plaintiff's claims for compensatory and punitive damages under Title VII are limited to $50,000. The Court agrees that defendant is entitled to judgment as a matter of law on plaintiff's national origin claim under Section 1981, and that damages recovered under Title VII are limited by statute, but finds that material issues of fact preclude summary judgment on the remaining claims. Defendant's motion is therefore sustained in part and overruled in part.

### Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The

court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who fails to make a showing to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. *Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 893 (10th Cir.1994). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993). This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party properly supports its motion, the nonmoving party may not rest upon mere allegation or denials of his or her pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993). The court reviews the evidence in a light most favorable to the nonmoving party, *e.g., Thrasher v. B & B Chem. Co., Inc.,* 2 F.3d 995, 996 (10th Cir.1993), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2511.

Summary judgment is appropriate unless there is a genuine issue of material fact— meaning that a "reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

## Factual Background

In the fall of 1994, defendant received a grant from the National Corporation of Community Service to administer a new community program (the "Americorps program") in Wyandotte County, Kansas. The program served three neighborhoods in Wyandotte County: the Argentine area, the Central Avenue area and the Northeast area. To implement the program defendant hired an overall project director, Ann Jurcyk, and a crew chief for each of the three neighborhoods. Defendant hired plaintiff (a black female), James Ulrich (a white male) and Eric Kirkwood (a black male) for the three crew chief positions. Defendant initially assigned plaintiff to the Argentine area, Ulrich to the Central Avenue area and Kirkwood to the Northeast area.

Defendant began operating the Americorps program in January, 1995. During the first five months of that year Carla Everhart, president of United Way of Wyandotte County, became aware that plaintiff and Ulrich were having problems in their respective positions. For example, Ulrich's crew members complained that he made offensive remarks and lacked tact in his supervisory methods. Community members also complained about Ulrich's attitude and lack of service orientation. Plaintiff also had problems with her crew and community leaders. Everhart avers that as a result of these problems, and upon the recommendation of Jurcyk and Jean Nelson (Director of defendant's Retired Senior Volunteer Program), she was prepared to terminate both plaintiff and Ulrich. In early July, 1995, however, Ulrich tendered his resignation prior to and without knowledge of Everhart's intent to terminate his employment. Despite Everhart's professed intent to terminate plaintiff's employment, defendant transferred plaintiff to a position as the Central Avenue crew chief (Ulrich's former position). Plaintiff served in this position during July and August, 1995. While in the position, plaintiff distributed flyers which advertised child immunization programs at two public schools on August 18, 1995. At the time, the immunization program had not been approved by the Americorps Program Director. In addition,

plaintiff had not received approval from the school district to use the school grounds, nor had plaintiff confirmed that any person or organization legally permitted to administer immunizations would be available at the date and time indicated on the flyer.

Shortly thereafter, defendant notified plaintiff that she was terminated from the Central Avenue crew chief position. According to Jurcyk, the problems with the immunization program were the "straw that broke the camel's back." According to Everhart, the problems with the immunization program were a "contributing factor" in terminating plaintiff's position. On August 21, 1995, however, Everhart and Jurcyk prepared a memorandum which stated six reasons for plaintiff's termination: (1) non-compliance with supervisory directives; (2) failure to follow policy; (3) inability to provide necessary leadership; (4) tardiness; (5) failure to be on the job site as assigned; and (6) inability to develop appropriate working relationships.

Although the memorandum stated that the decision to terminate plaintiff's crew chief position was final, it also made the following offer:

> While being aware of the concerns enumerated above, we are also fully aware that you have other valuable job skills such as your excellent verbal skills and your willingness to work hard. We believe that the United Way office could use those skills and that willingness at the United Way office in the capacity of administrative support. At this point, we are uncertain of your computer skills. However, if you wish to stay in the employment of United Way and if you have effective computer skills we can offer you that position. The pay for this position is $8.80 per hour. The hours are 8:30 a.m. until 5:00 p.m. with occasional paid overtime.

The memorandum advised that plaintiff must notify Carla Everhart of her decision in writing by Thursday August 24, at 8:30 a.m.

Plaintiff claims that she did not receive the above memorandum until August 23. Plaintiff took her written acceptance to the United Way office on the morning of August 24, but she did not deliver it to Everhart prior to 8:30 a.m. Instead, at approximately 8:50 a.m., she gave it to Jean McClain, a United Way volunteer, outside the United Way building. Defendant claims that it filled the administrative position at approximately 9:45 or 10:00 a.m. that same day. Defendant hired caucasian women for both the administrative position and the Central avenue crew chief position.

After her termination, plaintiff wrote several letters to defendant concerning her desire for continued employment. By letter dated October 24, 1995, Jurcyk responded to such a letter stating, "Thank you for clarifying your feelings regarding the immunization drive and related matters, but your release was not based on the immunization drive sequence, but on the items innumerated [sic] in the letter where we also offered you a staff support position."

Plaintiff claims that Jurcyk, Nelson, and Everhart made comments evidencing a bias against her due to race and national origin. First, plaintiff alleges that when discussing plaintiff's problems with one of her crew members, Jurcyk told plaintiff, "it is going to come down to you or Ron. Ron has a truck and he's white." Plaintiff claims that Jurcyk rejected the possibility of transferring the crew member to another area and that defendant transferred her to the Central Avenue crew within a few days after this conversation.

Plaintiff also alleges that Jurcyk asked her whether she considered herself to be "better" than others because she was not from this country, and told plaintiff that she needed to make her crew members feel comfortable taking orders from a person of her "background." Similarly, plaintiff alleges that Nelson told her that she needed to make her crew members feel comfortable taking orders from a black person. Nelson also allegedly told plaintiff that defendant could not "use her kind" in the Argentine district. Plaintiff believed that Nelson was referring to her race. Finally, plaintiff alleges that Everhart told her on at least two occasions that "culturally [plaintiff's] parameters weren't acceptable."

### Analysis

Plaintiff offers no direct evidence that defendant discriminated against her on the basis of race. Instead, plaintiff relies on circumstantial evidence to prove defendant's discriminatory intent. To insure an efficient presentation of circumstantial evidence, the Tenth Circuit adopts the burden shifting scheme originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1]

Under the *McDonnell Douglas* framework, plaintiff first must establish a prima facie case of discrimination. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995). If defendant meets that burden, all presumptions of discrimination drop from the case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The burden then shifts back to plaintiff to prove by a preponderance of the evidence that defendant's proffered reasons for the challenged actions are merely a pretext for discrimination—*i.e.*, that it is "unworthy of belief." *Randle*, 69 F.3d at 451. A plaintiff may get over the hurdle of summary judgment by demonstrating weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could find the reasons unworthy of credence and infer that the employer did not act for those asserted legitimate, nondiscriminatory reasons. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997). Mere conjecture that the employer's explanation is a pretext for intentional discrimination, however, is not enough to overcome a motion for summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).

To establish a prima facie case of wrongful termination plaintiff must show that: (1) she is a member of a protected class; (2) her job performance was satisfactory; and (3) that defendant terminated her employment under circumstances giving rise to an inference of discrimination. *See Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1417 (10th Cir. 1993).[2]

▮▮▮ Defendant claims that plaintiff cannot establish a prima facie case of discrimination based on either her race or national origin because her job performance was not satisfactory. In the Tenth Circuit, however, an employer's proffered reason for taking an adverse action is not to be considered in assessing the sufficiency of plaintiff's prima facie case. *MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1119–1120 (10th Cir.1991); *Wright v. Wyandotte County Sheriff's Dept.*, 963 F.Supp. 1029, 1036 (D.Kan.1997). To the contrary:

> [A] plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was fired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she held her position for a significant period of time.

*MacDonald*, 941 F.2d at 1121 (citations omitted). Plaintiff satisfies this element of her prima facie case because she possessed the same qualifications at the time of her dis-

---

1. The elements of plaintiff's case and the allocation of burdens are the same under Title VII and Section 1981. *See Thomas v. Denny's Inc.*, 111 F.3d 1506, 1509–10 (10th Cir.1997).

2. Defendant asserts that plaintiff must meet a four part test: (1) that she is a member of a protected group; (2) that she was doing satisfactory work; (3) that she was discharged, or was subjected to unequal terms and conditions, or suffered a reduction in wages, or was retaliated against; and (4) that her position was filled by a person outside the protected group, or that similarly situated persons outside the protected group were treated differently for purposes of the unequal treatment, reduction in wages or retaliation claims. The Court finds the three part test enumerated by the Tenth Circuit in *Martin v. Nannie & the Newborns* to be the correct standard, particularly because "similarly situated persons" are not present in every case of discrimination. Where similarly situated non-protected individuals are present, disparate treatment may give rise to an inference of discrimination. Lack of similarly situated non-protected individuals, however, will not in itself defeat plaintiff's claim.

charge as she did when defendant hired her in 1994.

◼ Defendant also argues that plaintiff does not establish a prima facie case because she fails to demonstrate that defendant treated her differently than any similarly situated person outside the protected group. As previously stated, the Court does not find this to be a necessary element of plaintiff's prima facie case. Rather, plaintiff must demonstrate that defendant terminated her employment under circumstances giving rise to an inference of discrimination. *See Martin,* 3 F.3d at 1417. Everhart avers that in the summer of 1995 she was prepared to terminate the employment of two crew chiefs— plaintiff and Ulrich (a white male). Ultimately, however, defendant terminated only plaintiff because Ulrich voluntarily resigned before Everhart notified him of his pending termination. Shortly after Ulrich resigned, defendant transferred plaintiff to Ulrich's position for a few weeks before terminating her from that crew chief position. At that time, defendant made plaintiff a time-limited offer for an administrative position due to plaintiff's "other valuable job skills" such as her "excellent verbal skills" and "willingness to work hard." When plaintiff failed to meet defendant's short acceptance deadline, defendant proceeded to fill both positions with other females, both of whom are caucasian. The Court finds that these circumstances, and the alleged comments by Jurcyk, Nelson and Everhart evince the necessary inference required to establish plaintiff's prima facie case of race and national origin discrimination.

◼ Defendant offers legitimate nondiscriminatory reasons for plaintiff's termination. Specifically, defendant points to plaintiff's problems interacting with both her crew members and members of the community, and her failure to secure the necessary approvals for the immunization program. Indeed, Jurcyk referred to the problems with the immunization program as "the straw that broke the camel's back," and Everhart similarly indicated that it was a contributing factor to plaintiff's termination. Accordingly, it now becomes plaintiff's burden to show that a genuine dispute of material fact as to

whether defendant's proffered reasons for the challenged action are pretextual—i.e. unworthy of belief. If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate. The Title VII plaintiff at all times, however, bears the ultimate burden of persuasion. *See St. Mary's Honor Ctr.,* 509 U.S. at 511, 113 S.Ct. at 2749.

The record reveals genuine issues of material fact regarding pretext. First, plaintiff alleges that the individuals who terminated her from the crew chief position made comments to her which a reasonable jury might find discriminatory. A jury might reasonably find that the alleged comments related to plaintiff's race, national origin, or both. Moreover, despite the fact that defendant has identified plaintiff's problems with the immunization program as a legitimate nondiscriminatory reason for termination, the Americorps program director later advised plaintiff that this was not the basis for her release from the crew chief position. Finally, defendant filled both the administrative position and plaintiff's crew chief position with individuals outside the protected class. Viewing all of these factors together, the Court is unable to say as a matter of law that defendant is entitled to judgment. Accordingly, the motion for summary judgment on plaintiff's claims for race and national origin discrimination is overruled.

◼ Defendant also argues that 42 U.S.C. § 1981 does not provide relief for national origin discrimination, and asks the Court for judgment on this issue. In order to prove racial discrimination within the meaning of Section 1981, a plaintiff must prove that she was discriminated against on the basis of her ancestry or ethnic characteristics and not solely on the place or nation of her origin. *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987).

◼ To the extent that plaintiff has a legally cognizable claim based on her birth in the Dominican Republic, it is a claim for race, not national origin, discrimination. Plaintiff cannot proceed on a separate claims for race and national origin discrimination

under 42 U.S.C. § 1981. *See Cuello Suarez v. Puerto Rico Elec. Power Auth.,* 798 F.Supp. 876, 891 (D.Puerto Rico 1992) (holding that Dominican national must show evidence of race discrimination to prevail on Section 1981 claim). Accordingly, the Court finds that plaintiff may proceed to trial on the following claims: race discrimination under Title VII and 42 U.S.C. § 1981 and national origin discrimination under Title VII. Damages recovered under Title VII are limited by 42 U.S.C. § 1981a and any verdict in excess of the applicable statutory amount will be reduced by the Court.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 28) filed May 14, 1997, should be and hereby is sustained as to plaintiff's claim for national origin discrimination under 42 U.S.C. § 1981; sustained to the extent that any damages recovered under Title VII are limited by statute and will be reduced accordingly; and otherwise overruled.