MACK, Appellant,

v.

B.F. GOODRICH COMPANY, Appellee.

[Cite as *Mack v. B.F. Goodrich Co.* (1997), 121 Ohio App.3d 99.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71013.

Decided June 4, 1997.

*Robert A. Belovich* and *Julia Ryan Sullivan,* for appellant.

*Duvin, Cahn & Hutton* and *Kenneth B. Stark,* for appellee.

PATTON, Judge.

This appeal arises from a complaint filed by plaintiff-appellant Margaret Mack against defendant-appellee B.F. Goodrich Company ("BFG") for wrongful discharge as a result of age discrimination and retaliatory discharge based on sexual harassment allegations she had made about a supervisor. After discovery was completed, BFG moved for summary judgment. The trial court granted the motion, and it is from this order that Mack now appeals.

Mack began her employment with BFG in 1965 after graduating from college with a degree in biology. By 1974, Mack had been promoted to Senior Research and Development Assistant. In 1980, Mack accepted a transfer to the thermal analyst division. Mack submits that this transfer was a result of sexual harassment allegations she had made against her supervisor. Mack worked in the thermal analyst division until her dismissal in 1993.

During the period of Mack's employment, BFG underwent several structural changes. By 1992, BFG had been reduced from a $3 billion company to a $2 billion company by spinning off its tire division and another division. By December 1992, a new vice president took charge of the research division, which included the thermal analyst division where Mack worked. The vice president determined that the company could not justify its current expenditures in research, with BFG's overall reduction in size, so she decided to reduce costs by laying off between thirty-four and thirty-seven employees.

As a thermal analyst, Mack's job included chemical testing. Her supervisor was Caren Quisenberry, who worked in another location, but also did chemical testing. Quisenberry had a degree in chemistry and supervised the flame lab, where a procedure known as fire science testing was performed. Mack's job responsibilities did not include fire science testing.

BFG created a core group to determine who should be laid off. This group determined that BFG's thermal analysis business was going to decrease because the two divisions had been spun off. This left them with deciding between Quisenberry and Mack, because they were the two people who did the thermal analysis. The group ultimately chose Quisenberry because she was not only an experienced thermal analyst with a chemical degree, but she was also experienced in fire science testing. On November, 8, 1993, Mack was notified that she was being released, and as a result she filed a complaint.

Mack's first assignment of error states as follows:

"The trial court erred in granting BFG's motion for summary judgment on Mrs. Mack's claim for age discrimination."

Mack argues that she presented a prima facie case of age discrimination. She also claims that BFG's reason for discharging her was unsupported by any evidence and, therefore, just a pretext for the wrongful discharge.

BFG maintains that because this is a reduction-in-force case, Mack was required to produce direct, circumstantial, or statistical evidence of discrimination, but she did not. Furthermore, BFG submits that the reason for Mack's dismissal was not because of her age, but rather because she could not perform fire science testing.

Analysis of a discrimination claim is similar under Ohio and federal law. *Republic Steel Corp. v. Hailey* (1986), 30 Ohio App.3d 103, 106, 30 OBR 202, 205–206, 506 N.E.2d 1215, 1219–1220. The standards for evaluating discriminatory discharge claims were established in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. First, plaintiff must establish a prima facie case of discrimination. Defendant then must articulate "some legitimate nondiscriminatory reason" for the employee's termination. The burden then shifts back to plaintiff to prove that defendant's reason for termination was false or pretextual. *Id.* at 802–805, 93 S.Ct. at 1824, 36 L.Ed.2d at 678.

Additionally, in a reduction-in-force termination where the employer is eliminating positions due to economic necessity, the age discrimination plaintiff who has been terminated "carries a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons." *Ridenour v. Lawson Co.* (C.A.6, 1986), 791 F.2d 52, 57. Where a company is reorganizing or reducing its work force, a plaintiff-employee must present

"additional direct, circumstantial, or statistical evidence that age was a factor in the termination in order to establish a prima facie case." *Id.*

The Ohio Supreme Court stated in *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439, the requirements for establishing a prima facie case of age discrimination:

 "Absent direct evidence of age discrimination, in order to establish a prima facie case in violation of R.C. 4101.17 in an employment discharge action, a plaintiff-employee must demonstrate (1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class. (*Barker v. Scovill, Inc.* [1983], 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, paragraph one of the syllabus, modified and explained.)" *Kohmescher*, at syllabus.

In *Kohmescher*, the court determined the plaintiff-employee had furnished direct evidence of age discrimination to overcome a motion for summary judgment by the fact that a supervisor had written on a form that plaintiff should be selected as an employee who should be part of the company's reduction in force since he was "eligible for [the] retirement window." *Id.* at 504, 575 N.E.2d at 442.

 In the present case, there is no direct evidence of this kind, so we must proceed under the *Barker* analysis and determine whether Mack set forth a prima facie case of age discrimination and whether BFG's reason for discharging her was pretextual.

Mack was fifty years old when she was discharged. These facts satisfy the first two prongs of the test for a prima facie case of age discrimination.

The third prong of the test involves a determination of whether Mack was qualified for the position.

BFG argues that Mack was not qualified for the position because she was unable to do fire science testing. BFG submits *Bundy v. Sys. Research Laboratories* (May 3, 1996), Greene App. No. 94–CV–296, unreported, 1996 WL 220892, for the proposition that an employee is not qualified for a position if the position includes new responsibilities after a reduction in force. In *Bundy*, the employer was streamlining, and the employee's position was eliminated and later combined with other responsibilities to create a new position. The employer decided that another employee was more qualified to fill the new position and plaintiff-employee was discharged. The court held that the employee did not

present any evidence that he was qualified for the new position and, therefore, failed to satisfy the third prong of the test.

This reasoning is analogous to the present case. BFG was eliminating positions due to economic necessity and reorganization. There was no need to have two people performing thermal analysis, and thus a choice had to be made to retain one person. Caren Quisenberry was Mack's supervisor and was also able to do fire science testing, unlike Mack. BFG chose Quisenberry instead of Mack because Quisenberry could do fire science testing and Mack could not. Thus, the third prong is not satisfied.

Quisenberry was under the age of forty and assumed the responsibilities of Mack's job. The fourth prong is satisfied.

However, because Mack was not qualified for the position at BFG she did not establish a prima facie case of age discrimination under R.C. 4101.17.

Assuming, *arguendo*, that Mack had established a prima facie case of age discrimination, BFG demonstrated that its reason for her discharge was legitimate and nondiscriminatory.

Both Robert Kadunce and Donald Askea, supervisors at BFG, stated that there would be a decrease in demand for thermal analysis. Robert Hillstrom, director of research administration at BFG, stated there would be a decrease in thermal analysis because of reorganization and the use of open labs. Also, the demand for fire science testing would remain, and, as stated earlier, Mack was unable to perform this service. Furthermore, BFG's desire was to have an open lab where there would not be a need to perform chemical testing, as Mack did. An open lab negates the need for a chemical analyst because persons needing analysis do their own testing. BFG also states that it choose Quisenberry because she had a degree in chemistry while Mack had a degree in biology.

Mack disputes these reasons for discharge. She states that the demand for thermal analysis would increase and that she spent most of her time working on projects that would not be discontinued by the reorganization. Regarding her qualifications for the position, Mack argues that there is no difference between her degree and Quisenberry's. Mack also claims that the fact that she cannot perform fire science testing is irrelevant because BFG had another employee who could do fire science testing. This would allow BFG to retain Mack instead of Quisenberry because the other employee could do the fire science testing instead of Quisenberry. However, it was revealed that this other employee worked in another division of the company.

Mack's presentation of policies and changes at BFG together with her inferences and presumptions can only be used as circumstantial proof that she was terminated for discriminatory reasons. However, it does not constitute direct

evidence of the motivation behind her termination. Moreover, Mack did not present sufficient evidence to dispute the legitimate business reason for her termination by BFG. Based on the foregoing, Mack's first assignment of error is overruled.

Mack's second assignment of error states as follows:

"BFG was not entitled to summary judgment on Mrs. Mack's claim of retaliatory discharge."

Mack argues that she was sexually harassed by her supervisor in 1980 and was transferred to another department because she complained of the harassment. Mack claims that this transfer damaged her career because her potential for promotion after the transfer was decreased and was a primary reason for her discharge in 1993.

To establish a prima facie case of retaliatory discharge a plaintiff must produce evidence that (1) she engaged in protected activity, (2) her protected activities were known to defendant, (3) defendant took adverse employment action against her and stated reasons that were not the true retaliatory reason, and (4) there is a causal connection between the protected activity and the adverse employment action. *Rudy v. Loral Defense Sys.* (1993), 85 Ohio App.3d 148, 619 N.E.2d 449.

Addressing these four requirements, Mack testified that she engaged in the protected activity of complaining about the sexual harassment to her supervisor and as a result her complaints were known to her supervisor. BFG transferred her to another division, thereby depriving her of the opportunity for promotion, and because of these complaints she was placed in a position where there was no chance for advancement.

BFG argues that it has been thirteen years since the alleged sexual harassment and this lapse of time severs the necessary causal connection between the protected activity and the adverse action. BFG further states that there is no evidence showing that Mack's complaint of discrimination in 1980 was in any way tied to the decision to terminate her employment in 1993.

In *Chavez v. Arvada* (C.A.10, 1996), 88 F.3d 861, the adverse action did not "closely follow" the protected activity where there was a ten-year lapse between the two events. The court held that there was insufficient evidence to finding there was a causal connection between the adverse action and protected activity. See *Burrus v. United Tel. Co. of Kansas, Inc.* (C.A.10, 1982), 683 F.2d 339, 343 (causal connection not established where there was a three-year lapse between the adverse action and protected activity).

Because there was a thirteen-year lapse between the adverse action and protected activity and because Mack presented no evidence, other than her own unsupported affidavit, that BFG discharged her as a result of her complaints in 1980, we overrule Mack's second assignment of error.

*Judgment affirmed.*

PORTER, P.J., and O'DONNELL, J., concur.