Plaintiff-appellant Joseph Thompson appeals from the judgment against him following a jury trial on his wrongful discharge and age discrimination claims against defendants-appellees Cuyahoga Community College and its Board of Trustees ("CCC").
Thompson was employed by CCC since 1978 in various administrative positions under a series of one-year written contracts. He ultimately served as Division Head of Business during the term of his final contract. The contract provided in part as follows:
 The College [CCC] shall employ the Appointee [Thompson] as Division Head, Business, for the period July 1, 1993 through June 30, 1994 (52 weeks) * * *.
CCC decided to reorganize its business program to eliminate the division head positions. Before the expiration of his contract, Thompson was notified orally on May 4, 1994, and in writing on May 10, 1994, that CCC would not renew his contract after it expired on June 30, 1994. The reorganization did not occur until March 1995.
As part of the reorganization, CCC subsequently created the new position of Dean of Business, Math, and Technology. This new position had additional responsibilities beyond those of the Division Head of Business. Until this new position was created in March 1995, various existing employees performed tasks that had been performed by Thompson as Division Head of Business. Thompson submitted a resume for an interview, but was not hired to serve in this new position.
Thompson filed his first complaint against CCC in Case No. CV 279629 alleging age, sex, and race discrimination, as well as claims of breach of express and implied contract. Thompson was male, Caucasian, and approximately seventy years of age when CCC did not renew his contract. On the eve of the originally scheduled trial, he voluntarily dismissed his sex and race discrimination claims.
He refiled just age discrimination claims under federal and Ohio law in Case No. CV-309102, after the EEOC declined to pursue them. The trial court ultimately consolidated these claims of age discrimination with the original breach of contract action. During the course of the proceedings, the trial court denied CCC's motion and Thompson's cross-motion for summary judgment on the breach of contract claim. The matter thereafter proceeded to a jury trial over the course of nine days. The testimony presented by Thompson from thirteen witnesses comprised approximately 1300 pages of transcript. The court directed a verdict against Thompson on his age discrimination claims, concluding that he failed to present a prima facie case.
CCC thereafter presented approximately seventy pages of testimony from three witnesses. The parties made closing arguments before the trial court instructed the jury and submitted Thompson's breach of contract claims to the jury. The jury returned a verdict in favor of CCC on the breach of contract claims. Thompson timely appeals, raising six assignments of error.
Thompson's first assignment of error challenges the trial court's denial of his pretrial cross-motion for partial summary judgment on his breach of contract claims as follows:
 THE TRIAL COURT ERRONEOUSLY DENIED APPELLANT'S CROSSMOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF APPELLEES' LIABILITY FOR BREACH OF CONTRACT.
This assignment lacks merit.
Thompson argues that he was entitled to summary judgment on his contract claims because his written contract expressly incorporated various provisions which prevented CCC from nonrenewing his contract as it did. Specifically, Thompson argues that CCC breached its (1) 1984 official plan which established the division head position, (2) 1992 disciplinary/performance policy, and (3) reduction in force ("RIF") policies and procedures. He also argues that the prior practice of renewing his annual contracts implied an agreement to do so in the future. Our review of the record shows, however, contrary to Thompson's argument, that these matters involved, at most, disputed issues of fact which were properly submitted to a jury and found by the jury against him.
Initially, we note the Ohio Supreme Court has held that any error in the denial of a pretrial motion for stimmary judgment is rendered moot or harmless as in the case at bar when a subsequent trial on the same issues reveals that there were genuine issues of material fact. Contimental Ins. Co. v. Whittington(1994),71 Ohio St.3d 150, syllabus. This matter proceeded to a lengthy trial over the course of nine days, but the jury did not find in his favor, despite his exhaustive presentation of his myriad contract claims.
Thompson's argument on appeal, that he was entitled to summary judgment without a trial, ignores a basic element of establishing a claim of reversible error, that is, the existence of prejudice. He wants us to ignore that he not only received a full jury trial on his contract claims, but also that the jury rejected his claims on the merits.[1]
In the Whittington case, the Supreme Court of Ohio, declining to address the merits of the arguments concerning summary judgment under these circumstances, held as follows:
 The question whether the trial court erred in denying Contimental's [defendant's] motion for summary judgment became irrelevant and the error (if any) was corrected when the jury determined the issues at trial in favor of appellants.
Id. at 157-158. Although the Supreme Court in Whittington did not address the merits of the summary judgment dispute, we briefly discuss Thompson's claim that the trial court erred by declining before trial to enter summary judgment in his favor as a matter of law.
It is well established that summary judgment should not be granted unless the record shows there is no genuine issue as to any material fact, reasonable minds can come to but one conclusion, and the moving party is entitled to judgment as a matter of law. Civ.R. 56 (C). When making this determination, the trial court is required to review the evidence in the light most favorable to the non-moving party, CCC in this case. Id.
The record in the case at bar reveals that the parties presented sharply conflicting theories and evidence in their crossmotions for summary judgment to support their versions of the relevant events. As a result of our review of these materials in compliance with this standard governing motions for summary judgment, we find that the trial court properly denied Thompson's motion for summary judgment.
Thompson's first argument is that CCC's 1984 plan created the position of Division Head and that CCC did not obtain approval to change the plan and eliminate the position. We need not address the substance of this claim because, even if true, the continued existence of the position did not mandate that Thompson be among the persons employed as a Division Head. In other words, the mere existence of the position did not mean ipso facto that Thompson would hold the position in perpetuity. There is a significant difference between the existence of a position and the identity of the person who holds that position.
CCC states that its failure to renew plaintiff's contract, moreover, was in anticipation of a plan to restructure the college. The fact that the Board had not yet approved such a plan when the president decided not to renew plaintiff's contract does not constitute a breach of contract. In order to keep their options open, CEOs often make decisions relating to plans not yet approved. Thus Thompson must further prove that the contract would require CCC to retain him before, during, and after reorganization. Thompson's argument on reduction in force apparently attempts to fill in this gap, but this argument fails for the reasons discussed below.
Thompson's second argument is that CCC did not comply with its disciplinary/performance policy when it decided not to renew his contract for another year. Thompson contends that permitting his contract to expire constituted "discipline" for inadequate performance. CCC argued, on the other hand, that the discipline policy did not apply because his contract lapsed under its own express terms.
CCC presented evidence that it desired to improve its business program, which suffered continual declining enrollment and criticism by the local business community as inadequate. The evidence is quite clear that CCC anticipated and ultimately made changes to its organizational structure and to the duties of the Dean, which was a high policy-making position, by adding new responsibilities. Under these circumstances the non-renewal of a contract does not mean that the employee holding the prior position did not adequately perform his job as it then existed. On the contrary, the non-renewal was simply a necessary stage to the creation of a new position, for which he was not hired. Even if one could view the non-renewal of a contract under these circumstances as some form of discipline as Thompson argues, the trial court was not required to accept this characterization as a matter of law.
Finally, Thompson has likewise failed to establish that CCC breached its RIF policy and/or procedures. The parties disputed whether the expiration of Thompson's contract constituted a RIF. Even if it did and even if the 1982 procedures governed because the 1992 procedures were not properly adopted as he argues, Thompson failed to show, however, he was entitled under the 1982 procedure to recall as the most senior employee in lay-off status that qualified for any position. (Id. at Para. [H].) The search committee for the new Dean position, chosen by the faculty senate and comprised mostly of non-administration faculty members, specifically rejected his application for an interview for the new position. Nor has Thompson shown he was qualified for any other positions that were open.
Moreover, contrary to Thompson's claim, the 1982 RIF procedures do not mandate that two months advance notice be given at all times before lay-off s. Rather, it provided that "[t]he college will attempt to give as much advance notice of layoff as possible; two months advance notice of layoff shall be the minimum whenever possible." (Id. at Para. [G].) The parties disputed as a matter of fact whether the notice in this case — approximately four days short of two months — was sufficiently advanced or whether more notice was possible under the circumstances. Resolving such a dispute was a matter for the jury.
Accordingly, Thompson's first assignment of error is overruled.
Thompson's second assignment of error challenges the directed verdict against him on his age discrimination claims as follows:
 THE TRIAL COURT ERRONEOUSLY DIRECTED A VERDICT FOR APPELLEES ON APPELLANT'S STATE AND FEDERAL AGE DISCRIMINATION CLAIMS.
This assignment lacks merit.
Thompson argues the trial court improperly granted a directed verdict against him because he presented a prima facie case that his employment was terminated because of his age or other improper reasons. After reviewing the record, we find that the trial court properly granted a directed verdict against him on this claim.
Federal and Ohio law governing discrimination claims are similar. The Ohio Supreme Court most recently summarized the principles governing such claims in Byrnes v. LCI CommunicationHoldings Co.(1996), 77 Ohio St.3d 125. Thompson contends that there was direct evidence of age discrimination in this case because a CCC Executive Vice President allegedly made statements at a diversity seminar before the non-renewal of his contract about the desirability of recruiting a more diverse (that is, younger, minority) faculty.
However, as discussed below under his third assignment of error, such information was not introduced into evidence and Thompson failed to show that the trial court abused its discretion by excluding it.[2] More importantly, however, even if the statements were made and admitted into evidence, it is well established that such general and isolated comments, not specifically linked to the plaintiff or the position, are insufficient to support a claim of unlawful discrimination. E.g.,Byrnes v. LCI Communication Holdings Co., supra at 129-130; Gagnev. Northwestern Nat'l Ins. Co.(6th Cir. 1989), 881 F.2d 309, 313
314; Stair v. Phoenix Presentations, Inc.(1996). 116 Ohio App.3d 500,506-507; Street v. Gertenslager Co.(1995), 103 Ohio App.3d 156,163; Brewer v. Cleveland City Schools, Bd. of Ed.(July 10, 1997), Cuyahoga App. No. 71283, unreported at pp. 6-8.
Thompson also argues that CCC asked him whether he chose to retire or to have his contract non-renewed. It is noteworthy, however, that, during trial, he could not honestly testify that CCC even used the word "retire" or asked him to do so. He claimed merely that he subjectively concluded that CCC wanted him to retire, but he could not offer any concrete statements by CCC during the meeting as the basis for his conclusion.
The parties agree that Thompson was orally informed at a meeting on May 4, 1994 that his contract would not be renewed. The CCC officials at the meeting with Thompson denied raising the subject of retirement. According to Thompson, CCC subsequently gave him the following weekend to decide whether he chose to retire or to have his contract non-renewed. When he informed CCC that he declined to retire, CCC gave him a second, written notice on May 10, 1994 of the non-renewal of his contract.
Thompson's own testimony, which was vague and admittedly based on his own subjective beliefs, was not sufficient to support a claim that CCC discriminated against him on account of his age. He presented nothing beyond his own conjecture to indicate that CCC decided to reorganize the college simply to get rid of him because of his age or that its reorganization was otherwise a pretext for non-renewal of his contract. His claims about sex and race discrimination were similarly unsupported by direct evidence.
Thompson likewise failed to prove by indirect evidence that he was discriminated against because of his age or other unlawful reason. To present a prima facie case of discrimination, the plaintiff must show: (1) that he was a member of a statutorily protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. E.g., Byrnes v. LCICommunication Holdings Co., supra at 128; Mack v. B.F. GoodrichCo.(1997), 121 Ohio App.3d 99.
As in Mack, Thompson presented no evidence in the case at bar to satisfy the third element that he was qualified, after his position as Division Head of Business was eliminated, for the expanded duties of the newly created position of Dean of Business, Math and Technology. Id. at 102-103.[3]
The search committee for the new position of Dean, appointed by the head of the faculty senate and without any senior members of CCC administration, declined to interview him for the new position after he submitted his resume. There is no evidence to indicate what the search committee considered in rejecting his application.
The President clarified she wanted someone more aggressive in recruiting students because registration throughout the college had declined. Thus she would understandably have considered this criterion in those candidates who survived the search committee. Thompson claims that student recruitment was not his duty. While this skill may not have been delineated in the job duties of Division Head, it is sufficient that the President desired it in the future Dean if the skill is reasonably related to the position. Many attributes are not precisely described in a job description, but may reasonably be a preference of the person who hires or retains employees. The test for this motive is whether the person who was finally hired or retained had this skill at least more so than Thompson had. Thompson did not show his superiority regarding this skill or that this skill was not reasonably related to the duties of a Dean.
While the President's criteria are relevant to her decision for non-renewal, they are irrelevant, however, in regard to the new position of Dean if there is no evidence that the search committee followed them. Since the search committee was appointed by the head of the faculty senate, we cannot presume that it was an arm of the President and followed her wishes. If the search committee rejected Thompson's application and, therefore, he was not on the list of candidates presented to the President, the evidence of unlawful discrimination under those circumstances must be found in the faculty senate committee. In short, Thompson did not present evidence from which a reasonable jury could find that he was unlawfully discharged or singled out for non-renewal or unlawfully was not subsequently rehired to his current position or promoted to the newly created position.
Finally, even if Thompson presented prima facie evidence of discrimination claims as he contends, however, he did not present evidence to rebut CCC's demonstration that his contract lawfully expired by its own terms and that he was not renewed as part of a reorganization. Id. at 103-105; Gagne v. Northwestern Nat. Ins.Co., supra at 313-314; Doerter v. Bluffton College(1994),98 Ohio App.3d 95, 99; Allen v. Ethicon, Inc.(S.D. Ohio 1996),919 F. Supp. 1093, 1098-1099. Without presenting evidence from which it could be inferred that CCC's asserted permissible grounds for its actions were false, Thompson could not prevail on his discrimination claims as a matter of law.
Accordingly, Thompson's second assignment of error is overruled.
Thompson's third assignment challenges three evidentiary rulings by the trial court as follows:
 THE TRIAL COURT ERRONEOUSLY EXCLUDED RELEVANT EVIDENCE RELATING TO APPELLANT'S AGE DISCRIMINATION AND BREACH OF CONTRACT CLAIMS.
This assignment lacks merit.
Thompson argues the trial court improperly excluded testimony by other employees concerning statements a CCC Executive Vice President made during a meeting expressing his views on diversity. He also complains that he was not permitted to present evidence concerning claims against CCC by other former employees. Finally, he also maintains that he should have been able to present his dismissed sex and race discrimination claims as breach of contract claims.
It is well established that trial court rulings concerning the admissibility of evidence will not be reversed on appeal absent a clear abuse of discretion resulting in material adverse prejudice. Renfro v. Black(1990), 52 Ohio St.3d 27, 32; Shimolav. Cleveland(1992), 89 Ohio App.3d 505, 511. Even if this court would have reached a different conclusion concerning any of these evidentiary issues, we may not simply substitute our judgment for that of the trial court. Id.
To constitute a reversible abuse of discretion, the trial court's ruling must be more than an error of law; it must be unreasonable, arbitrary, or unconscionable. In Nakoff v. FairviewGen. Hosp.(1996), 75 Ohio St.3d 254, the Supreme Court of Ohio held that to satisfy this standard the trial court's ruling:
 must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.
Id. at 256. After reviewing the record, we conclude that Thompson failed to establish either an abuse of discretion or prejudice from the challenged rulings by the trial court in the case at bar.
The record shows that the trial court required Thompson to call as a witness the CCC administrator who allegedly made the statements concerning diversity in hiring, rather than permitting several employees[4] to testify second-hand as to what he had allegedly said. Thompson did not present testimony from the administrator during trial[5], so the trial court did not permit the introduction of second-hand assertions concerning the administrator' s statements.
First, there is no evidence this administrator made or influenced or articulated the reasons for the decision not to renew plaintiff's contract. Second, even if the alleged statement of general affirmative action principles at a diversity meeting was authorized by CCC to be taken as an official statement of hiring or retention policy as Thompson contends, it is well established that trial courts may control the mode and manner of presenting evidence. Evid.R. 611. The trial court was within its discretion to require Thompson to present the testimony from the alleged source of the comments before permitting him to present second-hand statements by other former employees.
More importantly, however, even if this evidence were admissible, Thompson has failed to show any prejudice from excluding the proposed testimony. As noted above under the second assignment of error, even if this evidence were admitted, it would not establish Thompson's claim of age discrimination. Thompson presented absolutely no evidence to specifically link these general statements to the decision not to renew his contract. E.g., Byrnes v. DCI Communication Holdings Co., supra.
Thompson also challenges, in three sentences in his appellate brief, a related ruling by the trial court that excluded testimony concerning sex and race discrimination by former employees. This particular evidentiary ruling involved the same problem of requiring a separate mini-trial to determine what occurred in the other cases to determine whether it could be construed to have any relevance in Thompson's case. Even if the evidence were relevant and admissible, the trial court did not abuse its discretion or commit reversible error by excluding it. See e.g., McCluney v. Jos. Schlitz Brewing Co.(7th Cir. 1984),728 F.2d 924, 929.
At the outset of trial, counsel for Thompson expressly minimized this claim of sex and race discrimination. The claim was somewhat obscure to begin with. Thompson originally raised, but voluntarily dismissed, specific statutory sex and race discrimination claims. He sought to resurrect them as part of his contract claims, however, by arguing that his contract prohibited such discrimination because it incorporated CCC policies on non discrimination.
When CCC stated it believed the claims had been dismissed, counsel for Thompson stated he believed sex and race discrimination was a subsidiary factor in his discharge. The primary factor was age." The trial court thereafter read to the jury the parties' stipulated instruction concerning this issue. CCC did not subsequently present any evidence in its own case concerning sex or race. Under the circumstances, the jury was informed of the information Thompson desired and the trial court did not commit reversible error by resolving the issue as counsel for Thompson invited him to.
Finally, Thompson complains that the trial court did not permit him to present other evidence of prior discrimination and contract and tort claims by two former employees against CCC. He argued that the other cases involved similar claims and indicated CCC's intent and motive when CCC subsequently did not renew Thompson' s contract.
Under the circumstances, the trial court could properly find that the information was either not relevant to Thompson's breach of contract claims, or, if relevant, that its probative value was substantially outweighed by the dangers of unfair prejudice, the confusion of issues, or the misleading of the jury. Evid.R. 403 (A); Shrand v. Federal Pacific Electric Co.(6th Cir. 1988),851 F.2d 152, 155-156; Neal v. Hamilton Cty.(1993.), 87 Ohio App.3d 670,680.
Accordingly, Thompson's third assignment of error is overruled.
Thompson's fourth assignment of error follows:
 THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
This assignment lacks merit.
Thompson contends the jury verdict against him on his contract claims was against the manifest weight of the evidence. It is well established, however, that a reviewing court will not reverse a jury verdict that is supported by some competent credible evidence. Seasons Coal Co. v. Cleveland(1984), 10 Ohio St.3d 77.
CCC presented evidence that Thompson's contract was lawfully permitted to lapse upon expiration of its stated term. The jury discounted Thompson's arguments and evidence to the contrary. Under the circumstances, we are unable to find that the jury committed a manifest miscarriage of justice by weighing the evidence, evaluating the credibility of the witnesses, and resolving the conflicts in the evidence as it did in this case.
Accordingly, Thompson' s fourth' assignment of error is overruled.
Thompson's fifth and sixth assignments of error challenge the trial court's instructions on his breach of contract claim as follows:
 THE TRIAL COURT ERRED IN REQUIRING APPELLANT TO ARGUE HIS CASE TO [SIC] JURY BEFORE THE COURT HAD REVIEWED THE PARTIES' PROPOSED JURY INSTRUCTIONS AND HAD INFORMED COUNSEL OF ITS PROPOSED ACTION ON THOSE REQUESTS.
 THE TRIAL COURT ERRED IN FAILING TO CHARGE THE JURY REGARDING: (1) THE SPECIFICS OF APPELLANT'S BREACH OF CONTRACT CLAIMS, (2) THE NATURE OF THE EMPLOYMENT RELATIONSHIP BETWEEN AN EMPLOYEE OF A GOVERNMENT AGENCY AND THE AGENCY AS EMPLOYER, (3) THE FACT THAT AN EMPLOYEE SUCH AS APPELLANT MAY OBTAIN A PROPERTY INTEREST IN HIS CONTINUED CONTRACT AND THAT NONRENEWAL OF A CONTRACT CAN CONSTITUTE WRONGFUL TERMINATION, AND (4) THE STATUTORY REQUIREMENTS CONCERNING THE USE AND AMENDMENT OF OFFICIAL CHARTERS BY COMMUNITY COLLEGE DISTRICTS IN OHIO.
These assignments lack merit.
Thompson complains that the trial court failed to give him sufficient advance notice concerning the content of its instructions. He also complains that the trial court did not give various supplemental instructions he requested.
Thompson submitted twenty-one pages of proposed instructions on April 9, 1996, before the originally scheduled trial date. These proposed instructions were relatively brief and cited, inter alia, certain provisions from the general Ohio Jury Instructions ("OJI"). Approximately one year later, on April 16, 1997, shortly before the rescheduled trial date, Thompson filed an additional twenty-eight pages of supplemental instructions. Ten of these pages involved his breach of contract claims. They were highly argumentative and requested, inter alia, the trial court read additional passages from seven of Thompson's trial exhibits.
At the lunch break on May 2, 1997, when counsel were discussing the admission of exhibits after CCC concluded its case, counsel for Thompson inquired about jury instructions. No charge conference was on the record. Counsel thereafter returned from lunch and made closing arguments to the jury without inquiry by anyone about the trial court's proposed instructions. After closing arguments concluded and after the jury was released for the weekend, counsel discussed instructions with the trial judge.
Thompson's counsel argued that before his closing argument he had no advance notice of the trial judge's instructions: There is a colloquy in the record contradicting this claim:
THE COURT: Well, I did tell you many days ago
Mr. Lybarger: Yeah.
 THE COURT: — OJI was the instruction and, of course, we could have discussed the nuances, but we didn't because the subject didn't come up until almost noon time today.
(Tr. 1662-1663.)
On Monday morning, Thompson's counsel submitted a second set of supplemental instructions. This second supplement purportedly superseded his original and first supplemental jury instructions and contained eight pages of instruction on his breach of contract claims. These instructions were likewise one-sided and emphasized in great detail Thompson's view of the case. For "balance" CCC's view of the case was inserted in the form of a terse denial of the litany.
Rejecting the proposed instructions, the trial court instructed the jury with the general OJI breach of contract instructions. Counsel for Thompson objected because he wanted the trial court to describe his factual allegations in more detail and because the court omitted certain requests.
Thompson's fifth assignment of error complains that the trial court did not advise him before his closing argument of the instructions it proposed to give the jury. This argument is contradicted by the trial court's statement on the record that "many days ago" the judge informed counsel that he would use the OJI breach of contract instructions. As the transcript excerpt quoted above reveals, Thompson's counsel did not dispute the trial court's statement and, in fact, conceded it.
The record shows, contrary to Thompson's argument, that he was sufficiently informed of the substance of the trial court's proposed instructions prior to oral argument in this case. The first announcement of the court sufficiently informed Thompson's counsel. The second decision, after the conclusion of oral argument, merely reaffirmed the court's announcement made "many days" earlier, which was sufficient notice in advance of oral argument in this case.
The trial court's general instructions on breach of contract sufficiently instructed the jury concerning the governing law in this case. The OJI delivered to the jury in this case contain the essential elements of breach of contract claims. Counsel exhaustively presented evidence during the nine days of trial and argued to the jury all of the items he claims were omitted by the trial court. The trial court was not required to argue Thompson's case to the jury under the guise of instructing them. None of the allegedly improper omissions from these approved standard instructions undermined the adequacy of the instructions in this case. After reviewing the instructions and the record as a whole, we find that the jury was aware of Thompson's specific claims and that the jury instructions provided sufficient guidance for the jury to resolve them.
Thompson has likewise failed to show reversible error concerning the omission of instructions about the nature of government contracts. General principles of contract law govern the resolution of this dispute. Thompson failed to show that he had any recognized property interest in his public employment beyond the fixed term spelled out in his contract. See e.g.,Sabet v. Eastern Virginia Medical Authority(4th Cir. 1985),775 F.2d 1266, 1269-1270. The omission of additional instructions, which may have been misleading without a more complete or balanced explanation, was warranted under the circumstances.
Finally, as noted above under the first assignment of error, instructions concerning whether CCC was required to follow its charter, which established the position of Division Head, were not shown to be relevant to his claim for breach of contract. Nor was the breach of contract question determined by whether approval had been received to change the position of Division Head of Business, because nothing in the contract mandated that Thompson retain his position or any comparable position after the expiration of the term of his contract. In other words, Thompson did not show that he had a property interest of any kind in his employment that extended beyond the date the contract expired. See e.g., id. at 1269-1270; Cameron v. Bd. of Ed. of Hillsboro,Ohio, City School Dist.(S.D. Ohio 1991), 795 F. Supp. 228. 236. Nor did he show that permitting his contract to expire under its own terms required an amendment to the CCC Charter. Thus no instructions to the jury were required on these matters. Accordingly, Thompson's fifth and sixth assignments of error are overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue but of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J. and TIMOTHY E. McMONAGLE, J., CONCUR.
 ___________________________________ DIANE KARPINSKI JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] It is noteworthy that he challenges only the manifest weight of the evidence, rather than the sufficiency, to support the jury verdict for defendants. By not challenging the sufficiency of the evidence to support the defense verdict, he apparently concedes that there was sufficient evidence for the jury to reject his claims.
[2] The same can be said about his attempt to use cases filed by two other former employees.
[3] Because Thompson failed to present evidence to support the third element of this test, we decline to express any opinion concerning the remaining elements. Specifically, we express no opinion concerning whether the fourth element may be satisfied under Ohio law when the replacement employee is over forty years of age. See O'Connor v. Consolidated Coin Caterers(1996),517 U.S. 308(applying federal age discrimination law).
[4] These employees apparently also sued CCC, but the nature of the allegations in these other cases was disputed and is not clear from the record. (Tr. 1223-1241.)
[5] After refusing to present testimony during his case in chief from the Executive Vice President who allegedly made the statements, Thompson subsequently made a motion to re-open his case to present such omitted evidence as the court was stating its reasons for granting a directed verdict against him. The court denied the belated request to re-open his case and granted the motion for directed verdict.