JOURNAL ENTRY AND OPINION.
{¶ 1} Appellant, Clyde Wilson ("Wilson"), appeals from the granting of summary judgment for appellee, Precision Environmental ("Precision"), by the lower court, on Wilson's claims of public policy wrongful discharge and age discrimination under R.C. 4112.14(A).
 {¶ 2} Wilson initially filed a two-count complaint against Precision, Tony Digeronomo and Tom Zuchowski. He dismissed the claims against both individuals, and the claims remained against Precision, including public policy wrongful discharge and age discrimination in violation of R.C. 4112.14. Precision filed a motion for summary judgment on December 17, 2001, and Wilson filed a brief in opposition on February 7, 2002.
 {¶ 3} Subsequently, on October 4, 2002, the lower court granted Precision's motion for summary judgment rendering an opinion which stated that Wilson failed to establish direct and indirect evidence of age discrimination. For the following reasons, we affirm the decision of the lower court in granting summary judgment.
 {¶ 4} Wilson, 53 years of age, was terminated from his at-will employment with Precision on August 4, 2000. He was initially hired by Precision as a mechanic on May 27, 1991 and later held the position of "shop employee."
 {¶ 5} Precision performs asbestos abatement and removal while engaging in selective building demolition. In particular, Precision removes asbestos and other hazardous materials from building construction work sites and conducts precision demolition work in anticipation of construction or renovation.
 {¶ 6} The majority of Precision's employees are members of the Laborer's Union, Local 310. These union members, supervisors, and management employees who work at sites in the field are referred to as "field employees." In addition, Precision employs "shop employees," which are non-union employees, to support the work of the field employees. The primary responsibilities of the shop employees include: loading trucks with tools, equipment and materials; delivering tools, equipment and materials to the various job sites in the field; unloading the trucks in the field. Additional responsibilities include cleaning and maintaining Precision's tools and equipment as well as returning tools, equipment and unused materials to the shop.
 {¶ 7} Precision's business is partially dependent upon the construction industry and is therefore seasonal in nature. In particular, most of Precision's work occurs outside. As the fall season approaches, Precision generally experiences a decline in its work load for the field employees, which eventually trickles down to a decrease in work for the shop employees. This demonstrates the cyclical business pattern of Precision and other employers in the same type of business.
 {¶ 8} Specifically, in June 2000, Precision's employees worked 22,999 field hours; in July 2000, the number of field hours decreased to 16,820 hours; and in August 2000, Precision's employees worked 14,289 field hours. In other words, Precision experienced a 38 percent drop in the field hours worked by its employees between June 2000 and August 2000.
 {¶ 9} As a result, Precision discharged eight shop employees during the second half of 2000, which amounts to a 20 percent reduction in the shop workforce from June to December. Precision relied upon the opinions of the supervisors and other shop and field employees to lay off or terminate employees it perceived to be the worst performers.[1],[2]
Tom Zuchowski, General Manager for Precision, made the final decision concerning terminations.
 {¶ 10} The following is a breakdown of the ages of the eight employees who were discharged from similarly situated jobs as the appellant: 21, 22, 23, 24, 27, 32, 37 and 53 years old[3].
 {¶ 11} Wilson was perceived by his direct supervisor and other field employees as one of the worst performers. In Spring 2000, Wilson began working a second job as a cab driver. His direct supervisor, Brian Zuchowski ("Zuchowski"), noticed a decrease in work performance levels. Zuchowski stated it appeared that Wilson was exhausted and was taking hours to make deliveries that should have been finished more quickly. Specifically, on one occasion, Zuchowski received a complaint that Wilson had disappeared for six hours on a delivery which should have taken one to two hours to complete.
 {¶ 12} Zuchowski also observed a decrease in Wilson's work efficiency, a decreased availability for off hours or overtime, and unauthorized use on a daily basis of the company vehicle. The refusal of overtime work did not make Wilson subject to termination, but made him less valuable and more vulnerable to layoff. There was also an incident where Wilson inappropriately disposed of personal material which he had labeled as "asbestos." Zuchowski had also received numerous complaints about Wilson from other coworkers. In addition, Wilson failed to obtain his commercial driver's license ("CDL") as requested by Precision.
 {¶ 13} Eventually, Wilson was approached by Zuchowski concerning his part-time employment. Wilson stated he needed the additional income. In response, Zuchowski offered to sponsor Wilson to become a member of the union in order to perform higher paying field work; however, Wilson declined this offer.[4]
 {¶ 14} Eventually, Wilson and seven other employees were discharged from the shop. Precision reassigned Wilson's workload to another employee to perform in addition to the other duties of that individual. Wilson's duties were effectively redistributed among other existing employees who were already performing related work. Although six employees were hired during this time frame, five of the six left those positions within the same period. One of the employees transferred to the union, which Wilson decided to forego.
 {¶ 15} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356.
 {¶ 16} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina, Ltd. of Texas (1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 17} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul
(1990), 71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735.
 {¶ 18} Wilson presents one assignment of error which addresses two separate issues.[5]
 {¶ 19} This court will address the second issue first, then proceed to address the first issue.
 {¶ 20} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 21} R.C. 4112.14(A) provides:
 {¶ 22} "No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."
 {¶ 23} A prima facie case of age discrimination may be established in one of two ways; indirectly by the four-part analysis set forth inBarker v. Scovill, Inc. (1983), 6 Ohio St.3d 146, as adopted fromMcDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, or directly, which is other than the four-part demonstration of Barker. Kohmescher v. KrogerCo. (1991), 61 Ohio St.3d 501.
 {¶ 24} In order to establish a prima facie case of age discrimination through direct evidence, the employee must present evidence, of any nature, that shows an employer is more likely than not motivated by discriminatory intent. Direct evidence means evidence that proves a fact directly, without an inference or presumption, which is in contrast to indirect evidence or raising an inference of discriminatory intent. Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578. Direct evidence requires no inferences to prove discrimination. Ballock v. MetalTrades, Inc. (6th Circuit 1985), 775 F.2d 703.
 {¶ 25} "The general rule is that age related comments referring directly to a worker may support an inference of age discrimination. But, isolated and ambiguous comments are too abstract to support a finding of discrimination." Moon v. Compass Group USA Inc. (Aug. 27, 1999), Hamilton App. No. C-980927. In Byrnes v. LCI CommunicationHoldings Co. (1996), 77 Ohio St.3d 125, "An employee must prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination to establish a violation,"77 Ohio St.3d at 130. In Dobozy v. Gentek Building Products Inc. (Nov. 22, 2000), Cuyahoga App. No. 70047, this court held that a supervisor's comment that the company needed younger blood was insufficient to create a material issue of fact precluding summary judgment.
 {¶ 26} Wilson fails to establish direct evidence of age discrimination. In his deposition, Wilson states that Tom Zuchowski made the following statement while he was informing Wilson of his termination: "It was time for me to move on, that it was time for me to move on and that he gave me a couple referrals. And that's when he told me about the younger men going through the shop to get them out in the field and I was * * * I was no longer needed."
 {¶ 27} It is disputed by Tom Zuchowski that this comment was made. But assuming arguendo that it was made, it is ambiguous. Precision often trained employees who worked in the shop to move into the field through the union. Wilson was offered sponsorship by Precision to join the union, but declined. Furthermore, the allegations that the discharges were motivated by discriminatory intent is not supported by the facts. Seven of the eight employees discharged were in their twenties and thirties. Only Wilson, age 53, was over the age of forty years. This direct evidence presented by Wilson fails to demonstrate that Precision was more likely than not motivated by discriminatory intent.
 {¶ 28} Absent direct evidence of age discrimination, a prima facie case of age discrimination may be established through indirect evidence by demonstrating that: He was a member of the statutorily-protected class; he was discharged; he was qualified for the position; and he was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class. Mack v. B. F. Goodrich Co. (1997),121 Ohio App.3d 99. This creates a presumption of discrimination and ultimately shifts the burden of proof to the employer to articulate a legitimate non-discriminatory reason for the claimant's discharge. Subsequently, the claimant must then demonstrate that the rationale set forth by the employer was merely pretext for unlawful discrimination.McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792; Barker v. ScovillInc. (1983), 6 Ohio St.3d 146.
 {¶ 29} However, in a case that alleges a reduction in work force, the claimant is required to provide additional direct, circumstantial or statistical evidence that age was a factor in the decision to terminate.Mack v. B. F. Goodrich Co. (1997), 121 Ohio App.3d 99. See, also,Ridenour v. Lawson Co. (C.A. 6 1986), 791 F.2d 52.
 {¶ 30} It is undisputed that Wilson meets the first two prongs of the prima facie case of age discrimination, a violation of R.C. 4112.02. Wilson is a member of the statutorily-protected class and suffered an adverse employment action. However, Wilson was not performing his job function to the satisfaction of his employer. Furthermore, Wilson cannot overcome the obstacle of the heightened prima facie case requirement in a work force reduction case.
 {¶ 31} In order to establish the "qualified" element of the prima facie case, Wilson must prove he was performing to the company's satisfaction, under Ohio Law. In Smith v. Greater Cleveland RegionalTransit Auth. (May 24, 2001), Cuyahoga App. No. 78274, this court stated, "to demonstrate qualification for a position a litigant must not only demonstrate the capability of performing the work, but must also demonstrate that he or she is meeting the employer's legitimate expectations."
 {¶ 32} Wilson contends that he held his position with Precision for over nine years and had always been a loyal, hard-working employee qualified for his job. In his deposition, Tom Zuchowski does not dispute that Wilson was dependable and did not initiate trouble prior to obtaining his second job in the spring of 2000. However, subsequent to working his second job, Wilson did not meet his employer's legitimate expectations.
 {¶ 33} Although Precision did not have a formal policy concerning written reprimands, there is a plethora of evidence demonstrating verbal reprimands and complaints against Wilson by managers, supervisors, and other field and shop employees. Wilson was tardy in his delivery of materials to job sites, performed substandard work due to his exhaustion, continued his unauthorized use of the company vehicle, misused asbestos materials for disposal and failed to obtain his CDL as requested several times by his employer.
 {¶ 34} This court next analyzes the fourth prong of the McDonnellDouglas test. 411 U.S. 792. In a case that alleges a reduction in the work force, the claimant is required to provide additional direct, circumstantial or statistical evidence that age was a factor in the decision to terminate. Mack v. B. F. Goodrich Co. (1997),121 Ohio App.3d 99. In Barnes v. Gen Corp. (6th Cir. 1990), 896 F.2d 1457, the Sixth Circuit found, "A work force reduction situation occurs when business consideration caused an employer to eliminate one or more positions with the company. An employee is not eliminated as part of the work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to their other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform [that employee's] duties."
 {¶ 35} Here, Precision reduced its work force by 20 percent during the period in question. Specifically, in June 2000, Precision worked 22,999 field hours; in July 2000, the number of field hours decreased to 16,820 hours; and in August 2000, Precision worked 14,289 field hours, amounting to a 38 percent drop from the field hours worked in June 2000. As a result of this reduction, Precision discharged eight shop employees during the second half of 2000. Two other shop employees who performed different duties were also discharged during the same time frame.
 {¶ 36} Furthermore, Precision reassigned Wilson's workload to another employee to perform in addition to the other duties of that individual. Wilson's duties were effectively redistributed among other employees who already performed related work.
 {¶ 37} Next, assuming arguendo that Wilson presented sufficient evidence to satisfy all the elements of the prima facie case under theMcDonnell Douglas formula, Precision has offered a legitimate, non-discriminatory reason for Wilson's discharge. Tom Zuchowski contends that Wilson's discharge occurred for two reasons: (1) a seasonal reduction in the work force and (2) unsatisfactory job performance by Wilson.
 {¶ 38} The burden then shifts to the appellant to demonstrate Precision's reason for discharge was a pretext for unlawful discrimination. Wilson relies on factually unsubstantiated self-serving conclusions that he is an exemplary employee and other employees were less qualified than himself. Wilson provides a brief description of the deficiencies of other employees; however, his subjective opinion of their work, without further supporting evidence or documentation of reprimands or evaluations they received by their direct supervisors, does not demonstrate that Wilson was a qualified employee and they were not.
 {¶ 39} The mere fact that some of the retained employees were younger than Wilson does not establish pretext. Beauchamp v. Compuserve,Inc. (1998), 126 Ohio App.3d 17, 27. Six individuals under the age of thirty were among those discharged. Five employees of the fifteen retained were over the age of 50, including an 82-year-old employee. Wilson cannot establish that Precision conducted its business with a discriminatory animus. Precision stated specific reasons for discharging some employees, including a seasonal reduction in the workforce and job performance.
 {¶ 40} This court finds it noteworthy that Wilson, upon his discharge and in view of the company's workforce reduction, did not contact Precision for rehiring the following spring. Precision often rehired its employees who had been laid off or discharged when seasonal work became available again. Wilson has failed to establish a prima facie case of age discrimination under the direct or indirect evidence standards. This issue is without merit.
 {¶ 41} We will next look at the first issue appellant addresses in his assignment of error. Wilson alleges under count one of his complaint that Precision terminated his employment because of his age, in violation of public policy. Our disposition of the age discrimination claim renders the public policy claim moot. This issue is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., and COLLEEN CONWAY COONEY, J., concur.
[1] Two other shop employees were discharged during the same time frame who performed different duties than Wilson.
[2] Precision often rehired those employees who directly requested reinstatement when work became available. Wilson did not make any attempts to seek re-employment.
[3] Appellant is the 53-year-old employee listed here.
[4] The shop often served as a training ground for new employees to transfer to the field for higher pay with the union.
[5] {¶ a} Assignment of Error: "The Trial Court Erred in Granting Summary Judgment to Defendant-Appellee Because Plaintiff-Appellant has Set Forth Sufficient Evidence to Permit a Jury to Find that He Was Terminated on the Basis of His Age in Violation of R.C. 4112 et seq. and Public Policy."
{¶ b} Issue No. 1: "Whether Evidence That the 53 Year Old Plaintiff Was Told, at the Time of His Termination, by the Manager Who Made the Decision to Terminate Him, that He Was Being Terminated So That the Company Could Move Younger Employees Into His Job, Constitutes Direct Evidence Of Age Discrimination."
{¶ c} Issue No. 2: "Whether Evidence That the 53 Year Old Plaintiff-Appellant, Who Held his Position With Defendant-appellee For Nine Years and Was Never Reprimanded Or Criticized For His Work Performance, Was Terminated And Replaced by a Twenty-Year Old With Performance Deficiencies, While the Company Gave Preferential Treatment to Young Workers in Their Twenties and Early Thirties With Serious Performance Deficiencies And Hired Additional Young Workers in their Twenties and Early Thirties, Has Set Forth Sufficient Indirect Evidence of Age Discrimination To Permit A Jury To Find In His Favor."