OPINION
{¶ 1} Helen Senu-Oke appeals from judgments of the Montgomery County Court of Common Pleas, which granted summary judgment to the Dayton City School District ("the District") and granted judgment on the pleadings to school district employee Janice West on her racial discrimination, sexual discrimination, and retaliation claims.
 {¶ 2} Senu-Oke, an African-American woman, was hired by the Dayton Board of Education as an Associate Director of Special Education in August 1996. When she was hired, her supervisor was Elizabeth Hagton, the Director of Special Education, a Caucasian woman. Hagton retired the following year. After some difficulty in finding an appropriate replacement, the District appointed Sylvia Orr, an African-American woman, through a non-competitive process to serve as Director.
 {¶ 3} Orr suggested that the Director of Special Education position be shared with another person and, at Orr's suggestion, the District appointed Kathy Condron as Co-Director of Special Education in 1999. Condron was a Caucasian woman. Again, this was a non-competitive process. Orr then retired in 2002. When Orr retired, the District appointed Condron to the position of Director without conducting a search for other qualified candidates.
 {¶ 4} In 2001, following a five year salary freeze in the District, Senu-Oke complained to the Board of Education about the fact that a Caucasian had recently been hired as an Associate Director of Special Education at a salary higher than what she was then earning. Senu-Oke asserted that the difference in salary was based on race. The District attributed the discrepancy in pay to the salary freeze that had been effect in the District for several years due to financial problems and to market forces that had driven up the salary that a newly-hired employee could expect. Senu-Oke also complained about the non-competitive appointment of Condron to Co-Director and, later, to Director of Special Education, claiming racial discrimination. In response to these allegations, the District's Equal Employment Opportunity Commission ("EEOC") Compliance Officer, Jeff Mims, recommended giving Senu-Oke a raise to resolve the dispute. Mims did not find racial discrimination. Taking into account all of the other administrators whose salaries had also been frozen, the District's superintendent, an African-American woman, decided not to implement Mims' recommendation.
 {¶ 5} In September 2002, Senu-Oke filed a charge of racial discrimination and retaliation with the Ohio Civil Rights Commission ("OCRC"). After the District responded, Senu-Oke withdrew the charge and sought a right to sue letter.
 {¶ 6} Condron retired in 2002, and the District posted the vacancy for the position of Director of Special Education. Senu-Oke applied and interviewed for the position. After conducting interviews with selected candidates, including Senu-Oke, the District was not satisfied with hiring any of the initial applicants. It decided that a broader candidate selection process was necessary and re-posted the position. In the interim, George Schueremann, a Caucasian male who was not interested in the position on a permanent basis, was appointed to serve as Director. Senu-Oke filed another complaint with the OCRC, alleging racial and sexual discrimination, when she learned that Schueremann had been selected as the interim director.
 {¶ 7} Senu-Oke continued to be considered for the position of Director when it was re-posted, and she was included in a second round of interviews. The District ultimately hired Cleaster Jackson, an African-American woman, to fill the position. Senu-Oke admitted that Jackson was more qualified to hold the position, but she felt that the District had specifically sought out someone more qualified than she was for discriminatory reasons and in retaliation for the filing of her charges with the OCRC.
 {¶ 8} After the OCRC found no probable cause for discrimination on Senu-Oke's charges, she filed suit against the Board and Janice West, an Assistant Superintendent for Pupil Services, alleging racial and sexual discrimination and retaliation for the filing of her complaint with the OCRC.
 {¶ 9} West filed a motion for judgment on the pleadings claiming that she was immune from liability. The trial court granted this motion. After extensive discovery, the District filed a motion for summary judgment on Senu-Oke's discrimination and retaliation claims, which the court also granted.
 {¶ 10} Senu-Oke raises two assignments of error on appeal.
"THE TRIAL COURT ERRED BY GRANTING, ON THE GROUNDS OF IMMUNITY, THE MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY DEFENDANT-APPELLEE JANICE M. WEST."
 {¶ 11} Senu-Oke argues that West was not entitled to judgment on the pleadings regarding her immunity from liability pursuant to R.C. 2744.03(A)(6). She reasons that political subdivisions are not immune from "their activities as employers because employment is neither a `governmental' nor a `proprietary' function." (Emphasis sic.) She also asserts that R.C. Chapter 4112 expressly imposes liability upon political subdivisions and their agents for discriminatory employment practices.
 {¶ 12} When considering a defendant's Civ. R. 12(C) motion for judgment on the pleadings, the trial court is required to construe as true all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party. Whaley v. FranklinCty. Bd. of Commrs., 92 Ohio St.3d 574, 581, 2001-Ohio-1287,752 N.E.2d 267, citing Peterson v. Teodosio (1973), 34 Ohio St.2d 161,165-166, 297 N.E.2d 113. Viewing the evidence in this manner, dismissal is appropriate if it is clear that the plaintiff could prove no set of facts in support of her claim that would entitle her to relief. State exrel. Midwest Pride IV, Inc. v. Pontious, 75 Ohio St.3d 565, 570,1996-Ohio-459, 664 N.E.2d 931. Appellate review of a judgment on the pleadings is de novo, which requires an independent determination of whether judgment has properly been entered as a matter of law. Euvrardv. The Christ Hosp. (2001), 141 Ohio App.3d 572, 575, 752 N.E.2d 326.
 {¶ 13} Senu-Oke's argument that employment is neither a governmental nor a proprietary function is spurious and frames the issue too narrowly. The hiring of special education teachers and administrators for a public school district is clearly a governmental function. As an employee of a political subdivision acting in connection with a governmental function, West was immune from liability pursuant to R.C. 2744.03 unless one of the following applied:
 {¶ 14} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 15} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 16} "(c) Liability is expressly imposed upon the employee by a section of the Revised Code. * * *"
 {¶ 17} R.C. 2744.03(A)(6).
 {¶ 18} West's acts were not outside the scope of her employment. However, Senu-Oke alleges in her complaint that West acted "with malice and in reckless indifference to [her] rights under Ohio non-discrimination law." Thus, construing all of the material allegations in the complaint in favor of Senu-Oke, as we are required to do, we must conclude that the trial court erred in entering judgment on the pleadings in favor of West on the issue of immunity under R.C. 2744.03(A)(6)(b).
 {¶ 19} Senu-Oke also argues that West was liable under the provisions of R.C. 4112, which outline unlawful discriminatory practices. This argument is related to liability imposed by R.C. 2744.03(A)(6)(c), supra, which provides an exception to immunity where liability is imposed by statute. Senu-Oke claims that R.C. Chapter 4112 "expressly impos[es] liability upon political subdivisions and their agents for discriminatory employment practices." In her motion for judgment on the pleadings, West responded to this argument by claiming that she was not an "employer" as defined by R.C. Chapter 4112.
 {¶ 20} R.C. 4112.02(A) makes it unlawful for any employer to discriminate on a number of bases, including race and sex. R.C. 4112.01(A)(2) states that an "employer" includes "the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." The supreme court has interpreted the portion of this definition referring to "any person acting directly or indirectly in the interest of an employer" to include supervisors and managers. Genaro v. Cent. Transport, Inc., 84 Ohio St.3d 293, 296,1999-Ohio-353, 703 N.E.2d 782. Applying the holding in Genaro, this court has refused to extend the definition of employer in R.C. 4112.01(A)(2) to co-workers who are non-supervisory employees. Hale v. Dayton, Montgomery App. No. 18800, 2002-Ohio-542.
 {¶ 21} Senu-Oke did not specifically allege in her complaint that West was her supervisor or manager. According to the complaint, West "was responsible for overseeing the operations of the District's department of special education," and her "duties included, but were not limited to, making hiring recommendations to the District superintendent and Board for the department of pupil services and special education." The complaint also stated that, although Senu-Oke informed West of her intention in 1999 to request a salary adjustment, the request was actually directed to the District's interim superintendent. Other requests, such as requests for meetings, were directed to the superintendent and to the director of compliance, rather than to West. West did provide the director of compliance with an "unsolicited written response" to Senu-Oke's allegations.
 {¶ 22} When we construe all of the material allegations in the complaint, with all reasonable inferences drawn therefrom, in favor of Senu-Oke, we must conclude that her allegations with respect to West's responsibilities were sufficient to survive a motion for judgment on the pleadings on the question of whether West was her supervisor or manager, and therefore subject to liability under R.C. Chapter 4112.
 {¶ 23} The first assignment of error is sustained.
"THE TRIAL COURT ERRED IN CONCLUDING THAT SENU-OKE HAD FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT REGARDING PRETEXT ON HER CLAIMS OF RACE AND SEX DISCRIMINATION AND RETALIATION."
 {¶ 24} Senu-Oke claimed racial discrimination in the appointment of Condron to Co-Director of Special Education in 1999 and to Director in 2002, racial and sexual discrimination in the appointment of George Scheuermann to Interim Director of Special Education in 2002, and retaliation against her for the filing of a civil rights complaint in the extended search for and hiring of Cleaster Jackson to serve as Director in 2003 and 2004. She claims that the trial court erred in granting summary judgment on these claims.
 {¶ 25} The Supreme Court of Ohio has held that, when an individual brings a discrimination claim in Ohio for violating R.C. 4112.02, "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code, is generally applicable * * *." Plumbers Steamfitters Joint Apprenticeship Commt. v. OhioCiv. Rights Comm. (1981), 66 Ohio St.2d 192, 196, 421 N.E.2d 128. The analytical framework set forth in McDonnell Douglas v. Green (1973),411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, in particular, has been recognized as the starting point for judicial inquiry into a complaint alleging discrimination. Plumbers, 66 Ohio St.3d at 197. "McDonnell
established a flexible formula to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees." Id.
 {¶ 26} Pursuant to McDonnell Douglas, the first step is for a complainant to prove a prima facie case of discrimination. The basic elements of employment discrimination in hiring or promotion are that: (1) she was a member of the statutorily protected class, (2) she suffered an adverse employment action (i.e., she was not promoted or hired, despite applying for the position), (3) she was qualified for the position, and (4) the position was left open or a person outside the protected class was given the position. See Burzynski v. Cohen (C.A.6, 2001), 264 F.3d 611, 622; Bush v. Dictaphone Corp. (C.A.6, 1998),161 F.3d 363, 368; Limberg v. Roosa, Montgomery App. No. 19988,2004-Ohio-1480. The plaintiff has the burden of establishing a prima facie case of discrimination in violation of R.C. 4112.02(A) by a preponderance of the evidence. Omobien v. Ohio Civ. Rights Comm. (1993),89 Ohio App.3d 100, 103-104, 263 N.E.2d 634.
 {¶ 27} If the plaintiff succeeds in establishing a prima facie case of employment discrimination, the burden shifts to defendant-employer to articulate some legitimate, nondiscriminatory reason for its actions. SeePlumbers, 66 Ohio St.3d at 197. If the defendant-employer carries its burden, the plaintiff must demonstrate that the reasons offered by the employer were not the true reasons, but were a pretext for discrimination. Id. at 197-98.
 {¶ 28} Senu-Oke alleged three racially and/or sexually discriminatory acts: the appointments of Condron as Co-Director of Special Education in 1999 and as Director in 2001 without competition and the appointment of Scheuermann in 2002 to serve as Interim Director of Special Education. The trial court found that Senu-Oke had established a prima facie case of discrimination in each instance, but that she had failed to demonstrate that the non-discriminatory reasons offered by the District were not the true reasons. In other words, she failed to show that the District's reasons were a pretext for discrimination. The District contends that, in addition to failing to show that its reasons were pretextual, Senu-Oke had failed to establish a prima facie case of discrimination.
 {¶ 29} We begin our discussion with the two appointments of Condron without the benefit of competitive processes. The District's argument is dismissive of these claims because Senu-Oke had not applied for the positions in question. However, insofar as these positions were never posted, and therefore no mechanism was in place whereby Senu-Oke could have applied for these positions, her failure to apply was not dispositive. Courts have held that an employee is not required, as an element of a prima facie case of discrimination, to show that he specifically asked about or applied for a position when he did not know about the opening and where there was no formal mechanism for expressing interest. See Bernard v. Gulf Oil Corp. (C.A. 5, 1988), 841 F.2d 547, 570
(holding that "it is not legally sufficient or legitimate for an employer to reject an employee who does not have notice or an opportunity to apply for a promotion"). See, also, Dews v. A.B. Dick Co. (C.A.6, 2000),231 F.3d 1016, 1022; Carmichael v. Birmingham Saw Works (C.A. 11, 1984),738 F.2d 1126, 1132-1133; Paldano v. Althin Medical, Inc. (S.D.Fla. 1996), 974 F.Supp. 1441, 1446.
 {¶ 30} Accordingly, in a failure to promote case like this one, an employee may be relieved of the burden of establishing the second and third elements of the McDonnell Douglas test: that he suffered an adverse employment action and was qualified for the position. "[I]n failure to promote cases, a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion." Dews,231 F.3d at 1022. There is no dispute that Senu-Oke belonged to a protected class and, with respect to the two promotions of Condron, that the person who got the position was not a member of the protected class. Thus, Senu-Oke established a prima facie case with respect to these claims.
 {¶ 31} The reasons offered by the District for Condron's promotions were that it saved time and money by appointing someone rather than conducting a search at a time when the District was suffering severe financial hardship, that Condron was highly qualified, that she was recommended by the then-Director of Special Education Sylvia Orr (an African-American woman), and that Condron had had a close working relationship with Orr for ten years. The trial court found these to be legitimate, non-discriminatory reasons for Condron's appointment, and we agree with this assessment.
 {¶ 32} The burden then shifted back to Senu-Oke to demonstrate that the reasons offered by the District were not the true reasons, but were a pretext for discrimination. Plumbers, 66 Ohio St.3d at 197-98. Pretext is established by either (1) a direct evidentiary showing that a discriminatory reason more likely motivated the employer or (2) an indirect evidentiary showing that the employer's explanation is not credible. Texas Dept. of Community Affairs v. Burdine (1981), 450 U.S. 248,253, 101 S.Ct. 1089, 67 L.Ed.2d 207. To refute indirectly the employer's explanation, the plaintiff may show that the proffered reason had no basis in fact, did not actually motivate the challenged conduct, or was insufficient to warrant the challenged conduct. Dews, 231 F.3d at 1021. "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co. (C.A.10, 1988), 853 F.2d 768,772.
 {¶ 33} In response to the District's explanation for Condron's initial appointment to Co-Director, Senu-Oke claims that Condron's qualifications and her good working relationship with Orr "utterly fail[ed] to address the employment decision in question." In other words, she asserts that Condron's qualifications did not justify the decision to appoint rather than to post the position, which is a separate question from the reasons why a particular employee was hired. With respect to Condron's later appointment to Director, Senu-Oke posits that the District's proffered explanation of saving time and money "lacked the specificity required to rebut [her] prima facie case." Further, Senu-Oke asserts that normal protocol called for posting positions at the director level and that the circumstances surrounding the subsequent appointment of Scheuermann and hiring of Cleaster Jackson, i.e., the re-posting and conducting of a broader search, demonstrate that the District was not really concerned about saving time and money.
 {¶ 34} In her attempt to rebut the explanations offered by the District as pretextual, Senu-Oke challenges the soundness of the District's management decisions without demonstrating in any way that the decisions were motivated by racial or sexual discrimination. The decision to appoint someone to the new position of Co-Director rather than to conduct a search was not inherently suspect, especially considering the District's financial straits at the time and the availability of a qualified and respected candidate. There was no requirement that the position be posted. Moreover, the person who recommended Condron for the appointment was the then-Director Sylvia Orr, an African-American woman. Orr and Condron served as Co-Directors for more than a year, at which point Orr retired and Condron was appointed to serve as Director.
 {¶ 35} In her deposition, Senu-Oke expressed her opinion that the appointment of Condron as Co-Director in 1999 was discriminatory because it "coronated" her to become Director later, when Orr retired. Senu-Oke admitted, however, that no one knew of Orr's plans to retire at the time of Condron's appointment. Senu-Oke also failed to offer any plausible explanation why Orr would be motivated to discriminate against a fellow African-American by acting as the District's "pawn" in the effort to "coronate" Condron.
 {¶ 36} Senu-Oke observed that every person who had held the position of Director of Special Education since she had been hired into the District in 1996 had been Caucasian except for Orr and Jackson. This observation was hardly damning, however. Orr had held or shared this position for three to four years of this eight year period, and another African-American, Jackson, was hired for the position in 2004. As such, this observation failed to rebut the reasons offered by the District.
 {¶ 37} Senu-Oke also relied very heavily on her own belief that she was better qualified for the position of Director than both Condron and Orr. Senu-Oke holds her qualifications in very high regard, and there is no dispute that she held the minimum certifications and degrees for the Director position. However, she presented no evidence that others in the District viewed her qualifications as highly as she did. In fact, the testimony of District supervisors suggests that, although she had the required certifications and degrees, Senu-Oke was lacking in some of the interpersonal skills and attention to detail that were important to the position. For example, she had ignored federally mandated prerequisites to the enrollment of a child in special education on more than one occasion. The District also presented evidence that Senu-Oke did not interview well, did not have outstanding performance reviews, and did not show the same dedication as other associate directors. Concerns included tardiness, poor attitude, lack of creativity and initiative, inappropriate behaviors, and trouble getting along with staff. None of her former supervisors thought that she would be a good director.
 {¶ 38} While Senu-Oke contends that Janice West clearly did not want her in the position of Director, she admitted that she did not know if West's reasons had to do with race. Indeed, Senu-Oke cited no incidents in which her race was directly at issue and West, whom she accused of having the most animus toward her, was another African-American woman. Her own evidence showed that many African-Americans served in leadership roles in the District, including in the position that she sought. No objective evidence was offered to show that her qualifications were superior to those of other candidates. Moreover, although we are cognizant of the fact that the use of overly subjective criteria in hiring decisions can mask discriminatory intent, see, e.g. Bruhwiler v. Univ. of Tennessee (C.A.6, 1999), 859 F.2d 419, 421, we also recognize that the consideration of somewhat intangible factors, such as interpersonal skills and teamwork, is worthwhile and appropriate. The fact that Senu-Oke had never been disciplined and had received acceptable marks on her evaluations is probative, but it did not prohibit the District from concluding that her personality was not well-suited to the position for which she had applied. Indeed, the District presented evidence that there was substantial apprehension to Senu-Oke's appointment among those with whom she would have been required to work, including threats to resign. Furthermore, the fact that the District conducted a more extensive and expensive search to fill the same position a few years later did not — without more — undercut its claim that its decision to appoint Condron had been motivated, in part, by saving money.
 {¶ 39} Senu-Oke's conjecture that Orr colluded with Caucasians to "coronate" a Causcasian to serve as Director at some indefinite time in the future was insufficient to survive summary judgment. As we noted supra, mere conjecture that an employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment. Branson, 853 F.2d at 772. Thus, we agree with the trial court's conclusion that Senu-Oke offered no evidence to show that the non-discriminatory reasons offered for the non-competitive appointments of Condron to Co-Director and later to Director were a pretext for racial discrimination. As such, she failed to create a genuine issue of material fact on these claims, and summary judgment was appropriate.
 {¶ 40} Senu-Oke further asserts that the District had racially and sexually discriminated against her when it appointed George Scheuermann to serve as Interim Director of Special Education and had retaliated against her for filing a discrimination claim with the OCRC by failing to hire her for the position of Director in 2003 and 2004. These claims are interrelated, and we will address them together.
 {¶ 41} Senu-Oke had applied for the position of Director of Special Education in 2003. After an initial round of applications and interviews during which Senu-Oke was considered, the District decided to conduct a broader search by re-posting the position, and Scheuermann was tapped to fill the position on an interim basis. Senu-Oke was still under consideration for the permanent position at this time. We will presume, for the sake of argument, that Scheuermann's appointment constituted an adverse employment action, even though Senu-Oke was still being considered for the permanent job. That being the case, Senu-Oke had established a prima facie case of racial and sexual discrimination in the appointment of Scheuermann.
 {¶ 42} The District responded to Senu-Oke's allegation by offering evidence that Scheuermann had been appointed to serve as the Interim Director because he was qualified for the job but had not expressed an interest in the permanent position. In other words, the District had not wanted one of the applicants for the permanent position to serve as the Interim Director. The trial court found this to be a legitimate, non-discriminatory reason to hire Scheuermann. Scheuermann served in this position for approximately six months until Cleaster Jackson, an African-American woman, was hired to fill it permanently. Senu-Oke offered no evidence to show that the District's justification for appointing Scheuermann was a pretext for racial or sexual discrimination. Thus, the trial court properly granted summary judgment on this claim.
 {¶ 43} Senu-Oke's last claim is that the hiring of Scheuermann as Interim Director in 2003 and the expanded search and hiring of Jackson as Director in 2004 were motivated by the District's desire to retaliate against her for filing complaints of discrimination with the OCRC.
 {¶ 44} In order to prove a prima facie case of retaliation, a plaintiff must show: (1) she was a member of a protected class or engaged in a protected activity; (2) the defendant-employer knew of her participation in the protected activity; (3) the defendant-employer took adverse employment action against her and stated reasons that were not the true retaliatory reasons; and (4) there was a causal link between the protected activity and the adverse employment action. Mack v. B.F.Goodrich Co. (1997), 121 Ohio App.3d 99, 104, 699 N.E.2d 97; Chandlerv. Empire Chem., Inc., Midwest Rubber Custom Mixing Div. (1994),99 Ohio App.3d 396, 402, 650 N.E.2d 950. As the trial court pointed out in its judgment, a claim for retaliation is actually a claim for discrimination under R.C. 4112.02(I), which prohibits any person from discriminating against another because that person has opposed any unlawful discriminatory practice or participated in any manner in such an investigation or proceeding.
 {¶ 45} As with other claims of discrimination, once the plaintiff presents evidence of a prima facie case of retaliation, the burden shifts to the defendant-employer to articulate a legitimate nondiscriminatory reason for its action. Burdine, 450 U.S. at 253. If the defendant-employer carries its burden, the burden shifts back to the plaintiff to prove that the proffered non-discriminatory reasons given by employer are a pretext. Reeves v. Sanderson Plumbing Products, Inc.
(2000), 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105. Again, mere conjecture that the employer's explanation is a pretext is an insufficient basis for denial of summary judgment. Branson,853 F.2d at 772.
 {¶ 46} Senu-Oke claims that the initial team that interviewed candidates for Director of Special Education in 2003 was biased against her and was chosen for that reason. The members of this interview team were selected by West, and she participated as well. No one was hired after this interview process, and the position was re-posted. By her own admission, Senu-Oke's "best evidence of a causal connection between [her] engagement in protected activity and her non-selection" was West's written response to one of Senu-Oke's discrimination charges. In this document, West characterized Senu-Oke's claim as "spurious" and stated: "[T]here is mounting evidence of the Charging Party's litigious efforts and vexatious use of the EEOC/OCRC process in her efforts to strong-arm the [District] into paying her more money." Senu-Oke further pointed out that neither Scheuermann nor Jackson had ever engaged in protected activity. She also claimed that she had been "humiliated" by other employees by being excluded from meetings and by their refusal to give her opinions the weight to which she thought they were entitled. She believed that she "should attend all meetings that are held * * * that deal with the special education department because of [her] exceptional credentials," but she offered no evidence that other Associate Directors attended all of the meetings in question.
 {¶ 47} The trial court found that West's statement did "not provide the causal link between the hiring of Condron, Scheuermann or Jackson and the filing of complaints made by Senu-Oke." We agree. It would be illogical to conclude that West's opinion that Senu-Oke's discrimination claim was groundless somehow established that discrimination or retaliation had occurred. The trial court also relied on some of the evidence that the District had presented about Senu-Oke's performance and attitude, as discussed supra, as well as her low marks on the initial interview. Although her scores on the interview were the highest of the initial group of interviewees, she scored only a 21 out of a possible 40, "plac[ing] her well below average even if she [was] the high scorer." The court found that the questions concerned such issues as leadership, the disability referral process, and creating an appropriate atmosphere for staff, and that the questions could not "be construed in a way that could take into account retaliation."
 {¶ 48} The trial court observed a distinction between bias and discrimination, and it noted that bias was not the court's concern. Although Senu-Oke faults the court for "excusing" bias, we think this distinction is a legitimate one. The fact that some (or all) of the members of the interview panel may have been "biased" against Senu-Oke because of their experiences in working with her is not indicative of an intent to discriminate against her because of her complaints to the OCRC, her race, or her sex.
 {¶ 49} Despite her low marks during the first round of interviews, Senu-Oke was considered again in the second round after the position had been re-posted. In this round, the panel of interviewers was expanded, as was the list of questions that were asked of the candidates. Senu-Oke scored a 27 on these questions, which was above average, but Jackson scored a 46. Moreover, Senu-Oke concedes that Jackson was better qualified for the job as she held a doctorate degree.
 {¶ 50} We agree with the trial court's conclusion that Senu-Oke's evidence failed to create a genuine issue of material fact as to whether the adverse employment actions against her — i.e., the interim appointment of Scheuermann in 2003 and the hiring of Jackson in 2004 — were motiviated by retaliation for her pervious complaints of discrimination.
 {¶ 51} Having concluded that there was no genuine issue of material fact as to racial discrimination, sexual discrimination, or retaliation, the second assignment of error is overruled.
 {¶ 52} The judgment of the trial court will be reversed in part and affirmed in part. The judgment on the pleadings in favor of West will be reversed, and that matter will be remanded to the trial court for further proceedings. The trial court's summary judgment in favor of the District will be affirmed.
Brogan, P.J. and Grady, J., concur.